CHRISTOPHER P., a minor, by his mother and next friend, NORMA P.; Norma P., on their own behalf and on behalf of all others similarly situated, Plaintiffs–Appellants, Cross–Appellees,

v.

Mark J. MARCUS, individually and in his capacity as Commissioner of the Connecticut Department of Children and Youth Services; Robert Suerken, individually and in his capacity as Superintendent of Schools of the Unified School District II, within the Connecticut Department of Children and Youth Services; Kathy Rockwood, individually and in her capacity as principal of the Family School, within the Unified School District of the Connecticut Department of Children and Youth Services; Gerald Tirozzi, individually and in his capacity as Secretary and Chief Executive Officer of the Connecticut State Board of Education, Defendants–Appellees, Cross–Appellants.

Nos. 1328, 1447, Dockets
89–7909, 90–7155.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1990.

Decided Sept. 27, 1990.

Richard McCarthy, Fairfield, Conn., for plaintiffs-appellants, cross-appellees.

John R. Whelan, Hartford, Conn., Asst. Atty. Gen. of State of Conn. (Ralph E. Urban, Asst. Atty. Gen., of counsel), for defendants-appellees, cross-appellants.

Before VAN GRAAFEILAND, MESKILL and WALKER, Circuit Judges.

WALKER, Circuit Judge:

This appeal involves the applicability of subchapter II of the Education of the Handicapped Act, entitled Assistance for Education of All Handicapped Children ("EAHCA" or "the Act"), 20 U.S.C. § 1400 *et seq.*, to the decision to discharge a child from a Connecticut facility at which he received special education services. Plaintiffs Christopher P., a handicapped minor child, by his mother and next friend Norma P., and Norma P. on her own behalf, appeal from judgments entered in the United States District Court for the District of Connecticut (Eginton, J.) granting the defendants' motion for summary judgment on the grounds that the defendants are protected by qualified immunity for the actions challenged and denying plaintiffs' request for declaratory relief. In addition, plaintiffs challenge the district court's partial award of attorneys' fees as an abuse of discretion. Defendants also appeal the district court's fee award on the ground that the plaintiffs are not "prevailing parties." Because we believe that the defendants are entitled to the protection of qualified immunity in the circumstances of this case, we affirm the district court's grant of summary judgment. However, because we conclude that plaintiffs are not "prevailing parties," we reverse the district court's award of attorneys' fees to plaintiffs.

## BACKGROUND

*Statutory and Institutional Overview*

Before considering the merits of this appeal, it is helpful to discuss briefly the setting in which it arises. The primary purpose of the EAHCA is to encourage states, through the use of fiscal incentives,

to provide a "free appropriate public education" for all handicapped children. *See, e.g.,* 20 U.S.C. § 1412(1). "Free appropriate public education" is defined in the Act as "special education and related services" which meet certain requirements set forth in the statute. 20 U.S.C. § 1401(a)(18). "Related services" includes

> such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education

> .    .    .    .    .

20 U.S.C. § 1401(a)(17).

Federal financial assistance is conditioned upon a State's compliance with specified procedures designed to ensure "all handicapped children the right to a free appropriate public education," 20 U.S.C. § 1412(1), and to ensure that parents participate in decisions affecting the education of their disabled children. 20 U.S.C. §§ 1412(2)(E), 1412(7). The procedural safeguards of the Act require that whenever an educational agency covered by the Act "proposes to initiate or change ... the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education," it must provide the parents or guardian of the child with written prior notice, 20 U.S.C. § 1415(b)(1)(C), and give them an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). The Act further requires that pending any proceedings conducted pursuant to the Act, the child shall remain in the current educational placement. 20 U.S.C. § 1415(e)(3).[1]

Connecticut has established a Department of Children and Youth Services (DCYS) to provide services for the care and treatment of mentally ill, emotionally disturbed, delinquent, abused and neglected children. Conn.Gen.Stat. § 17–412 (West Supp.1990). DCYS operates the Greater Bridgeport Children's Services Center (GBCSC), the children's unit of the Greater Bridgeport Mental Health Center. GBCSC, accredited by the Joint Commission on Accreditation of Hospitals for the provision of psychiatric treatment programs for children and adolescents, offers two direct service programs—partial hospitalization (day treatment) and outpatient psychiatric crisis service.

In order to provide educational services to children who reside in or receive day treatment at any state operated institution or facility within DCYS, Connecticut has established Unified School District # 2 (USD # 2). Conn.Gen.Stat. § 17–441. USD # 2 operates, *inter alia,* a school within GBCSC known as the Family School. A child becomes eligible to attend the Family School upon admission to GBCSC.

Admission to GBCSC is determined by an Admission Team consisting of the GBCSC Medical Director who is a psychiatrist, a GBCSC intake worker and the USD # 2 Pupil Services Coordinator. Following admission, a Treatment Team comprised of GBCSC medical and USD # 2 personnel prepares a treatment plan for each child. Although treatment methods are coordinated with educational services provided by USD # 2, the services provided to a child pursuant to the Treatment Plan are not limited to education but may include medical services such as drug therapy. Decisions regarding the continuation and termination of treatment at GBCSC are made by the Treatment Team under the supervision of the GBCSC medical director. While undergoing GBCSC treatment, the child's educational services are furnished in accordance with an individualized education plan

---

**1.** The regulations implementing the Act interpret the term "placement" to mean only the child's general program of education. *Concerned Parents v. New York City Bd. of Edu-* *cation,* 629 F.2d 751, 754 (2d Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981).

(IEP) developed by a Planning and Placement Team (PPT) consisting of the Family School principal, a pupil services coordinator, a Family School teacher and the child's parents or guardian.

Once the Treatment Team determines that a handicapped child no longer requires GBCSC care, he is discharged and becomes ineligible for educational services from USD # 2. *See* Conn.Gen.Stat. § 17–441. The child's local school system thereupon assumes responsibility for his education. With this general overview in mind, we turn to the facts of this case.

*Facts of This Case*

In 1985, when this litigation began, Christopher P. was an eight year old child suffering from a seizure disorder, learning disabilities and behavioral disturbances that rendered him handicapped within the meaning of the EAHCA. 20 U.S.C. § 1401(a)(1). Christopher had experienced problems in the Bridgeport public school system, and in the spring of 1984, the Child Guidance Center of Greater Bridgeport, Inc. recommended that he be admitted to GBCSC. Christopher was admitted on September 6, 1984. On October 18, 1984 Christopher's seven person Treatment Team, comprised of the GBCSC medical director, Day Treatment Clinician, Child Life Specialist, the Pupil Services Coordinator, a teacher from the Family School, a speech/language pathologist and defendant Kathy Rockwood, principal of the Family School, held its initial diagnostic case conference to plan his course of treatment. The team developed recommendations for Christopher's treatment and projected a discharge date of June 21, 1985.

Upon admission to GBCSC Christopher also became eligible for educational services from USD # 2. Accordingly, he was placed in the Family School. At the Family School he received educational services in accordance with an IEP developed for him by his Planning and Placement Team consisting of defendant Rockwood, principal of the Family School, a pupil services coordi-

nator, a teacher affiliated with the Family School and Christopher's mother, Norma P.

Christopher remained at the Family School for the 1984–85 school year. After fifty-six individual and thirty family therapy sessions, Christopher's Treatment Team, believing that he had progressed in his treatment to the point where he could function adequately with community mental health services available to him outside of GBCSC, discharged Christopher from GBCSC on June 21, 1985, the projected discharge date identified by the team at its initial diagnostic conference.[2] As a result, Christopher became ineligible to attend the Family School. The Bridgeport public school system consequently accepted full responsibility for Christopher's education for the 1985–1986 school year.

After receiving notice that Christopher had completed his treatment at GBCSC on June 17, 1985, the Bridgeport public school system's Planning and Placement Team met to plan Christopher's educational program for the coming school year. The team determined that Christopher would attend a special education class at the Roosevelt School in Bridgeport. His mother, Norma P., who attended this meeting, did not object to the placement. Rather, on August 20, 1985, Mrs. P., through counsel, wrote to defendant Robert Suerken, Superintendent of USD # 2, demanding an administrative hearing to review, pursuant to the EAHCA, the decision to discharge Christopher from the Family School and requesting that he be allowed to attend the Family School pending the conclusion of the administrative process.

When Christopher was not allowed to return to the Family School, Norma filed this lawsuit alleging that the defendants, Mark J. Marcus, commissioner of DCYS, Robert Suerken, superintendent of schools of USD # 2, Kathy Rockwood, principal of the Family School and Gerald Tirozzi, secretary and chief executive officer of the Connecticut State Board of Education, violated Christopher's rights under the EAH-

---

**2.** Pertinent to this appeal, this discharge decision was made without prior notice to Christo-

pher's parents.

CA by failing to notify his parents of the Act's procedural safeguards when they proposed to change his educational placement and by refusing to allow him to remain at the Family School during the pendency of administrative or judicial proceedings. *See* 20 U.S.C. §§ 1415(b)(1)(C), (e)(3). Norma sought damages, a declaratory judgment that the EAHCA applies to the Family School and attorneys' fees. On September 5, 1985, the district court entered a temporary restraining order requiring the defendants to readmit Christopher to the Family School which by agreement of the parties was extended three months. Christopher returned to the Family School on September 9, having missed only two days of classes. On September 30, 1985, Mrs. P. voluntarily removed Christopher from the Family School and enrolled him in a private school for which Bridgeport paid.

Both parties moved for summary judgment. The defendants argued that although the decision to discharge Christopher from GBCSC had the secondary effect of removing him from the Family School, that decision was a medical treatment decision made by GBCSC personnel rather than state education officials and accordingly, the EAHCA was not implicated. The district court granted summary judgment for the defendants holding that although the EAHCA is applicable to the Family School, the defendants are entitled to qualified immunity for the actions challenged by plaintiffs, because the EAHCA's applicability was not clearly established at the time the action arose. The district court later summarily denied as moot plaintiff's request pursuant to Fed.R.Civ.P. 60(b) for a declaratory judgment that the EAHCA is applicable to the Family School. Finally, the court awarded plaintiffs $29,100 in attorneys' fees. This appeal followed.

## DISCUSSION

A. *Qualified Immunity for Violations of the EAHCA*

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted); *Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir.1988); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law"). Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citing *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738) assessed in light of the legal rules that were clearly established at the time the action was taken.

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ..., but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citation omitted).

The district court ruled that DCYS and USD # 2 are local educational agencies within the meaning of the EAHCA section 1401(a)(8), and accordingly are bound by the Act's procedural requirements. The court concluded that

> the fact that the Family School was established as an adjunct to the GBCSC does not change the fact that it operates a a [sic] school within a school district which is subject to review by the Department of Education. Accordingly, individuals associated with District # 2 and the Family School are proper defendants in this suit.

However, the court found that because this conclusion recognizing the plaintiffs' rights was not "clearly established" law at the time the action arose, the defendants' exclusion of Christopher from the Family School without according him the procedur-

al rights guaranteed by the EAHCA was "objectively reasonable" under the circumstances. Accordingly, the court concluded that the defendants were entitled to the protection of qualified immunity.

On appeal, plaintiffs argue that the applicability of the EAHCA to the Family School was "clearly established" at the time the defendants excluded Christopher. Defendants respond that the relevant inquiry is not the applicability of the EAHCA to the Family School which they do not challenge, but whether the EAHCA applies to the GBCSC's discharge decisions. Defendants maintain that irrespective of whether the law was "clearly established" that the Family School and USD # 2 are subject to the EAHCA, it was not clear when this action arose that the EAHCA applied to GBCSC discharge decisions. We agree.

The critical issue in this case is not whether it was clearly established that the Family School is subject to the EAHCA—a matter as to which we have no doubt—but whether it was clearly established that EAHCA applies to GBCSC's decision to discharge Christopher. The decision was made by Christopher's Treatment Team, comprised of three persons affiliated with GBCSC (the medical director who is a psychiatrist, a day treatment clinician and child life specialist) and four persons affiliated with USD # 2, and was based on their belief that he had completed his medical treatment and could function adequately with the assistance of community mental health services available outside the facility. Christopher's discharge was not from the Family School but from the GBCSC, a medical facility, which then had the effect of removing Christopher from his educational placement at the Family School. Thus the district court's finding that the EAHCA applies to the Family School and USD # 2 does not resolve the inquiry here—whether the EAHCA applies to a decision made jointly by both medical and school personnel.

We need not decide whether the EAHCA applies to this joint decision to discharge Christopher because no matter how it is resolved, we agree with the district court that at the time this action arose, the defendants' actions were "objectively reasonable" as the plaintiffs' rights under the EAHCA were not clearly established. Accordingly, we agree with the district court that the defendants are entitled to the protection of qualified immunity.

Plaintiffs argue that the EAHCA unambiguously applies to the GBCSC's discharge decision for several reasons. Their first argument, that the Family School personnel made the decision to discharge Christopher, is faulty because, as we have discussed, the decision to discharge Christopher was made by an interdisciplinary treatment team. While four of the seven members of the team were affiliated with the Family School or USD # 2, we reject plaintiffs' unsupported assertion that Family School affiliates had a controlling voice in the decision in light of the fact that the team operated under the direction of the GBCSC medical director, Dr. Ryo Sook Chun, a psychiatrist.

Next, plaintiffs claim that even if we conclude that Family School personnel did not make the decision to discharge Christopher, the requirements of the EAHCA nonetheless apply as the statute's applicability does not depend upon the identity or professional qualifications of persons making educational decisions regarding handicapped children. While the conclusion we reach does not require a decision as to whether the EAHCA applies to GBCSC discharge decisions, this argument has considerable force.

The district court found, and defendants' do not dispute, that DCYS is a "local educational agency" within the meaning of the EAHCA and is, therefore, bound by the Act's procedural requirements. 20 U.S.C. 1401(a)(8).[3] GBCSC is a program of DCYS

---

**3.** 20 U.S.C. § 1401(a)(8) defines a local educational agency as

a public board of education or other public authority legally constituted within a State for

either administrative control or direction of, or to perform a service function for, public elementary or secondary schools in a city, county township, school district ... or such

and all of the members of Christopher's Treatment Team were DCYS employees. The mere fact that DCYS employees affiliated only with GBCSC and not the Family School were involved in or even ultimately responsible for the decision to discharge Christopher, should not, it seems to us, remove that decision from the reach of the EAHCA where, as here, that decision affects the educational placement of a handicapped child. Labelling the discharge a "medical decision" should not insulate it from the EAHCA if the decision has the effect of removing the child from his educational placement.[4] To insulate such decisions from the procedural requirements of the EAHCA, based upon the identity or the professional qualifications of the decisionmakers, would frustrate the purpose of the Act to "assure that the rights of handicapped children and their parents or guardians are protected," 20 U.S.C. § 1400(c), and that they are "guaranteed procedural safeguards with respect to the provision of free appropriate public education ..." 20 U.S.C. § 1415(a).

Defendants assert that plaintiffs' EAHCA claims are not properly directed at them because any change in Christopher's educational program was proposed by the Bridgeport public schools which accepted responsibility for Christopher's education upon his discharge from GBCSC at its June 17, 1985 Planning and Placement Team meeting at which an IEP was developed for Christopher. We find this argument somewhat disingenuous. If Christopher's transfer from the Family School to the Bridgeport public schools constitutes a change in Christopher's educational placement within the meaning of the section 1415(b)(1)(C), a question the district court did not reach, defendants' suggestion that Bridgeport is the proper defendant in this action rings

hollow. By suggesting that Bridgeport is the locus of plaintiffs' EAHCA rights, the defendants attempt to insulate from the procedural requirements of the Act the very kind of decision to which the Act was designed to apply.

Nonetheless, even assuming that the EAHCA does apply to GBCSC's decision to discharge Christopher, we agree with the district court that this was not clearly established at the time the instant action arose. First, it is not self-evident from the language of the EAHCA itself that the Act would cover a hybrid decision like the one at issue here. GBCSC, which is accredited by the Joint Commission on the Accreditation of Hospitals, is a medical facility and not a school. Although school personnel participated in the decision and it had the effect of removing Christopher from the Family School, the decision to discharge Christopher was, in substantial part, a medical decision made by a medical facility. The team concluded as a medical matter that Christopher could function adequately with community mental health services available outside GBCSC.

Congress addressed the EAHCA's procedural requirements only to state or local educational agencies or other public authorities established by state law to provide free public education. See 20 U.S.C. §§ 1415(a), 1401(a)(7)–(8), (22); *Lunceford v. District of Columbia Bd. of Education*, 745 F.2d 1577, 1580 (D.C.Cir.1984). The procedural safeguards guaranteed by the Act are designed to afford parents or guardians of handicapped children meaningful involvement in the *educational* placement of their children. See 20 U.S.C. § 1415(a), (b). Accordingly, the Act guarantees procedural safeguards "with respect to the provision of free appropriate public

combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary or secondary schools. Such term also includes any other public institution or agency having administrative control and direction of a public elementary or secondary school.

Judge Eginton found that DCYS and USD #2 are local educational agencies in that they are statutorily charged under Connecticut law with

the "administrative control or direction of, or to perform a service function for, public elementary or secondary schools." See Conn.Gen.Stat. § 17–415(*l*).

4. We express no opinion as to whether the removal of Christopher from the Family School constituted a change in his educational placement within the meaning of 20 U.S.C. § 1415(b)(1)(C).

education ..." 20 U.S.C. § 1415(a). Neither the statute, the regulations promulgated thereunder, nor the law of this circuit clearly establish that a medical decision or a hybrid medical/educational decision would be covered by the Act.

Plaintiffs' reliance on 34 C.F.R. Part 300.2, which provides that the EAHCA applies to state and local educational agencies, intermediate educational units, and schools and state correctional facilities, highlights the ambiguity that supports the defendants' claim of qualified immunity. While the Act clearly applies to the Family School, it is not apparent from the regulation that it applies to the hybrid medical and educational decision of GBCSC to discharge a child from its day treatment program which operates on a medical model. Cf. *Darlene L. v. Illinois State Bd. of Education*, 568 F.Supp. 1340, 1344 (N.D.Ill. 1983) (psychiatric services, because they are medical in nature, not included within the scope of the EAHCA except to the extent they are for evaluative and diagnostic purposes); *McKenzie v. Jefferson*, 566 F.Supp. 404, 412 (D.D.C.1983) (hospital component of residential program does not represent a special educational placement within the scope of the EAHCA since such placement is made for medical as opposed to educational reasons). Accordingly, the defendants could in good faith have believed that the medical decision to discharge Christopher from day treatment did not trigger the EAHCA's procedural safeguards as that decision affected Christopher's educational placement in only an indirect way.

Plaintiffs also point to the statutory definition of "special education" in support of their claim that the EAHCA clearly applies to the Family School. The Act provides that

[t]he term "special education" means specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction,

and instruction in hospitals and institutions.

20 U.S.C. § 1401(a)(16). While we agree with plaintiffs that by the terms of this definition, the Family School's affiliation with GBCSC, a medical facility, does not exempt it from the Act, we do not read section 1401(a)(16) as clearly establishing the Act's applicability to the decision to discharge a child from the medical facility, the relevant inquiry here. Indeed, section 1401(a)(16) suggests only that the operations of the Family School are governed by the provisions of the Act. It sheds no light on the applicability of the Act to the discharge decision which is the responsibility of the GBCSC Treatment Team under the direction of the medical director.

Moreover, the organizational structure and statutory interplay between DCYS, GBCSC, USD #2 and the Family School are such that the applicability of the EAHCA to GBCSC's discharge decisions cannot be said to have been clearly established at the time this action arose. Placement of a handicapped child in a DCYS program such as GBCSC enables the state simultaneously to provide both special education and medical services. The availability of educational services, however, is statutorily dependent upon the mixed medical and educational decision of the Treatment Team. Once the team discharges a child, he becomes ineligible for educational services from USD #2 and must look to his home school district for such services. Therefore, the defendants' contention that they believed that the school district which accepted responsibility for Christopher after his discharge from GBCSC was the entity responsible for his EAHCA rights was not objectively unreasonable at the time this action arose. Thus, we cannot say that it should have been apparent to the defendants that the discharge decision triggered the procedural guarantees of the EAHCA. Accordingly, we agree with the district court that the defendants are entitled to the protection of qualified immunity for their alleged violations of the EAHCA.[5]

5. In their complaint, plaintiffs also assert claims under the fourteenth amendment due process

clause and 42 U.S.C. § 1983. The district court, apparently concluding that the defendants are

## B. *Declaratory Judgment*

In their complaint, plaintiffs sought a declaratory judgment that the EAHCA applies to the Family School and that the defendants' failure to notify parents of handicapped students in USD # 2 of the procedural safeguards available to them prior to their discharge from the Family School pursuant to 20 U.S.C. § 1415 violates the EAHCA. Although in its March 17, 1989 decision the district court found the EAHCA applicable to the Family School, the court summarily declined to enter a declaratory judgment to that effect in response to the plaintiffs' December 19, 1989 motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). On appeal, plaintiffs ask this Court to declare that the EAHCA is applicable to the Family School.[6]

■ The decision to grant declaratory relief rests in the sound discretion of the district court and will not be disturbed on appeal unless there is a showing that the court abused its discretion. *See Holup v. Gates*, 544 F.2d 82, 85 n. 3 (2d Cir.1976); *cert. denied*, 430 U.S. 941, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); *Infinity Broadcasting Corp. of Illinois v. Prudential Ins. Co. of America*, 869 F.2d 1073, 1075 (7th Cir. 1989); *Tekton, Inc. v. Builders Bid Service of Utah, Inc.*, 676 F.2d 1352, 1354 (10th Cir.1982); *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2759 at 645 (2d ed. 1983).

■ A litigant may not use the declaratory judgment statute to secure judicial relief of moot questions. In determining whether a controversy has become moot, the relevant inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (citation omitted). However, where the offensive conduct is "capable of repetition, yet evading review," the rule that mootness strips the court of jurisdiction does not control. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). This exception requires at least the possibility that the "same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*).

■ We conclude that at the time the district court considered the plaintiffs' re-

---

entitled to the protection of qualified immunity in connection with these claims as well, granted summary judgment in the defendants' favor on all claims.

Plaintiffs' due process and section 1983 claims allege the very same violations of the EAHCA that are the subject of their claims under the Act itself. Accordingly, defendants' qualified immunity in connection with the EAHCA claims also shields them from liability for these alleged violations. Moreover, we question whether the facts as alleged by the plaintiffs state a cause of action under the due process clause. At its initial diagnostic case conference on October 18, 1984, Christopher's Treatment Team identified June 1985 as his projected discharge date. Thus, it appears that Christopher had no expectation of remaining at GBCSC or the Family School beyond that date that would rise to the level of a protected property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972) (no property interest sufficient to trigger due process hearing where employee's contract provided employment was to terminate on a set date). Christopher was discharged from GBCSC, and consequently, the Family School, on June 21, 1985 in accordance with the date projected by his Treatment Team. The Bridgeport public schools immediately held a Planning and Placement Team meeting on June 17, 1985 at which an IEP for Christopher was developed in anticipation of his returning to that district for the following school year. Although Christopher missed two days of the 1985–86 school year, his absence was due to his mother's decision to keep him home. Thus, we doubt whether the facts alleged establish a deprivation of any interest protected by the due process clause.

6. Defendants suggest that the plaintiffs' 60(b) motion, filed four months after the court issued its decision granting summary judgment in the defendants' favor, was untimely and therefore properly denied on that basis. *See Schildhaus v. Moe*, 335 F.2d 529, 530–31 (2d Cir.1964); 7 J. Moore, *Federal Practice* § 60.22[4] at 60–194–95 (2d ed. 1990). The timeliness of plaintiffs' motion is not dispositive of this issue as plaintiffs requested, albeit unsuccessfully, declaratory relief at other stages of the district court proceedings.

quest for declaratory relief, that request was moot. Shortly after plaintiffs began this action, the district court entered a temporary restraining order requiring the defendants to readmit Christopher to the Family School. The defendants subsequently agreed that Christopher could remain at the Family School for three months following the expiration of the restraining order. Thereafter, Christopher was admitted to the private Foundation School. At Norma P.'s request, Bridgeport agreed to pay for the cost of his education there. Consequently, Norma P. agreed to dissolve the temporary restraining order under which Christopher had been re-admitted to GBCSC in October, 1985. After one or two months, Christopher's mother removed him from the Foundation School and placed him in a program of Cooperative Educational Services, Inc., known as CES, for which Bridgeport paid.[7] Accordingly, at the time the district court considered the plaintiffs' request for declaratory relief, Christopher was neither within the jurisdiction of the GBCSC, nor attending the Family School. Nor was the plaintiffs' damage action pending as it had already been dismissed by the district court on qualified immunity grounds. Thus, there was no "substantial controversy" between the parties of "sufficient immediacy and reality" to warrant a declaratory judgment. Under these circumstances, we conclude that the district court was within its discretion in denying plaintiffs' request for declaratory relief.

Plaintiffs suggest that because Christopher is now only twelve years old and is entitled to a public education until he reaches twenty-one, this case falls under the exception to the mootness doctrine as the conduct challenged is "capable of repetition, yet evading review." However, because we are not persuaded that Christopher will again be subjected to the conduct of which he complains, we affirm the decision of the district court.

*Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), upon which the plaintiffs rely, is distinguishable. In *Honig*, the plaintiff challenged, pursuant to the EAHCA, his exclusion from school pending the completion of expulsion proceedings for violent and disruptive conduct related to his disabilities. The Supreme Court held that plaintiff's challenge was not moot as there was a sufficient likelihood that the plaintiff, who was twenty years old and no longer resided in the relevant school district, would one day return to the district and require educational services pursuant to the EAHCA. Explaining that the "capable of repetition" test requires that there be a " 'reasonable expectation' *or* a 'demonstrated probability' that the same controversy will recur," *Honig*, 484 U.S. at 318–19 n. 6, 108 S.Ct. at 601–02 n. 6 (quoting *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183) the Court found that given the plaintiff's continued eligibility for educational services under the EAHCA and the peculiar nature of his disability which left him unable to control his impulses, there was a "reasonable expectation" that the plaintiff would once again be excluded wrongfully by the defendants. Thus, the Court concluded, the case was not moot.

The facts before us are distinguishable in several ways. First, we see no reason why the defendants' actions here would evade review should they recur at a later date. In *Honig*, the twenty-year old plaintiff was only eligible for educational services until his twenty-first birthday. Thus, the Court explained, if he were wrongfully excluded again, he would likely be finished with school or otherwise ineligible for EAHCA protections by the time he could obtain review in the Supreme Court given the time it takes for cases to reach that court. *Honig*, 484 U.S. at 321–23, 108 S.Ct. at 603–04. Here, however, Christopher is only twelve years old. Should he be aggrieved by the conduct of the defendants he can file suit in the district court immediately, as he did in this case.

Moreover, we are not convinced that it is "reasonably likely" that Christopher will again be subjected to the behavior of which he complains. In order for the current dispute to recur, Christopher would first have to be referred back to GBCSC and

---

**7.** The parties dispute whether CES is under Bridgeport's control.

accepted by the admission team. He would then have to attend the Family School and be discharged by his Treatment Team against the wishes of his mother. This seems an unlikely set of circumstances. Neither Christopher nor his parents can make the decision to return him to GBCSC and USD # 2. By contrast, the plaintiff in *Honig* need only have re-enrolled in the relevant school district. Because he was unable to control his impulses, there was a reasonable expectation that he would again act disruptively and be expelled from school in a manner inconsistent with the EAHCA. Thus, the plaintiff himself was in control of the only decision necessary to make the conduct of which he complained likely to recur. Furthermore, Christopher's mere readmittance to GBCSC would not alone replicate the circumstances now before us. Accordingly, we conclude that the facts alleged do not fall within the "capable of repetition, yet evading review" exception to mootness.

■ Plaintiffs contend that declaratory relief is nonetheless warranted because even if the controversy between the parties in this case is moot, the rights of other students currently attending the Family School are at stake. We are not persuaded. The Supreme Court has cautioned that

> Federal courts must hesitate before resolving a controversy ... on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights.

*Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976) (citations omitted). Accordingly, we

find no fault with the district court's reluctance to adjudicate the rights of those not before it.[8] We therefore affirm the district court's denial of the plaintiffs' request for declaratory relief.

## C. *Attorneys' Fees*

■ The district court awarded plaintiffs $29,100 in attorneys' fees. Plaintiffs appeal the award arguing that they are entitled to the full $42,720 requested. Defendants have appealed the award as well, claiming that the plaintiffs are not "prevailing parties" within the meaning of 20 U.S.C. § 1415(e)(4)(B) and thus are not entitled to fees. Because we find that the plaintiffs have not prevailed in this action, we reverse the district court's fee award.

20 U.S.C. § 1415(e)(4)(B) provides that the court, in its discretion, may award reasonable attorneys' fees to a "prevailing party." " '[P]laintiffs may be considered "prevailing parties" for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Texas State Teachers Ass'n v. Garland Indep. School District,* 489 U.S. 782, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)).[9] At a minimum, the plaintiff must demonstrate a change in the legal relationship between itself and the defendant arising from the resolution of the lawsuit. *Id.* 109 S.Ct. at 1493.

In applying the prevailing party standard, it is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit. *See Institutionalized Juveniles v. Sec'y. of Public Welfare,* 758 F.2d 897, 911 (3d Cir. 1985) (citing *Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir.1979), *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982) ("look to the complaint to identify the conditions the suit sought to change, then use this as a benchmark to measure

---

**8.** Although the caption of this lawsuit suggests that it is a class action, the district court record reveals no certification of the purported class.

**9.** Although *Texas Teachers* involves the interpretation of the term "prevailing party" within the meaning of 42 U.S.C. § 1988, we believe it is also instructive in the context of the EAHCA.

relief ultimately obtained")). "A plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint, provided the relief obtained is of the same general type." *Koster v. Perales*, 903 F.2d 131, 134–35 (2d Cir.1990) (citing *Institutionalized Juveniles*, 758 F.2d at 912).

Plaintiffs first claim that they have prevailed in that they obtained a temporary restraining order and a brief extension of that order requiring the defendants to re-admit Christopher to the Family School. However, the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status. *See Bly v. McLeod*, 605 F.2d 134, 137 (4th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980); *see also Smith v. Thomas*, 687 F.2d 113, 115 (5th Cir.1982). The court granted the TRO, without addressing the merits which neither side briefed, solely to preserve the status quo, allowing Christopher to continue his education at the Family School until the court could rule on the merits of the plaintiffs' claims. Under these circumstances plaintiffs cannot be said to have prevailed on the basis of the TRO alone.

■ Next, plaintiffs point to the district court's determination in its March 17 ruling that the EAHCA applies to the Family School as a basis for their status as prevailing parties. "[A] favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff, [however,] does not suffice to render him a 'prevailing party.' Any other result strains both the statutory language and common sense." *Hewitt v. Helms*, 482 U.S. 755, 763, 107 S.Ct. 2672, 26, 96 L.Ed.2d 654 (1987). Like the plaintiff in *Hewitt*, the plaintiffs here have received no judicial re-

lief other than a favorable statement of the law en route to a judgment against them on the ground that the defendants are entitled to the protection of qualified immunity. Accordingly, we conclude that plaintiffs have not "prevailed" within the meaning of the statute.[10] We therefore reverse the district court's award of attorneys' fees.

### CONCLUSION

For the reasons set forth above, we affirm both the district court's grant of summary judgment in favor of the defendants and its denial of declaratory relief. However, we reverse the court's award of attorneys' fees to the plaintiffs.

---

**10.** Plaintiffs' argument that the favorable statement of the law and the TRP viewed together are sufficient to accord the prevailing party status is unpersuasive in light of the foregoing principles. In essence, plaintiffs attempt to use the court's favorable statement of the law to bootstrap the interim relief granted in this case solely to mitigate or forestall injury pending litigation into interim relief predicated upon an adjudication on the merits. This argument is unavailing in view of the record.