**RICHARD S., Cynthia R., Valdina R., and Roes 1 through 2500, individually, and on behalf of all others similarly situated by William Cable, M.D., as Guardian ad Litem, Melissa Tisdale, by and through her guardian ad litem, Debby Tisdale, Raymond Masao Kawaguchi, by and through his conservator, Margaret Reade, Sheila Williams, by and through her conservator, Essie Rogers, Philip Wilson, by and through his conservator, Betty Gray, and Roes 2501 through 5000, Debbie Tisdale, individually, and on behalf of the California Association of State Hospital Parent Councils for the Retarded, aka (CASH/PCR), Association for Retarded Citizens–California, aka, (ARC–CAL), Sacramento Association for the Retarded, Inc., aka (ARC–Sacramento), Plaintiffs,**

---

Barbara Bell, Jeffrey Cason, Donna Plouffe, Self-Advocacy Board of Los Angeles, Autism Society of Los Angeles, Area IV Board, Intervenors.

Melissa Tisdale, by and through her guardian ad litem, Debbie Tisdale, Philip Wilson, by and through his conservator, Betty Gray, Debbie Tisdale, individually, Debbie Tisdale, on behalf of the California Association of State Hospital Parent Councils for the Retarded, aka (CASH/PCR), Plaintiff-Appellants.

v.

DEPARTMENT OF DEVELOPMENTAL SERVICES OF the State of CALIFORNIA, Donna E. Shalala, in her capacity as Secretary of the Department of Health and Human Services, Fairview Developmental Center, South Coast Regional Project, Harbor Regional Center, Regional Center of Orange County, San Diego Regional Center, South Central Los Angeles Regional Center, Westside Regional Center, Clifford Allenby, as Director of the Department of Developmental Services State of California, Hugh Kohler, as Executive Director of Fairview Developmental Center, Lilia Tan Figueroa, M.D., as Medical Director of Fairview Developmental Center, Dawn Lemonds, as Director of South Coast Regional Project, Defendants.

No. 01-56370.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed Jan. 29, 2003.

Margaret M. Cahill (argued), Hardiman & Cahill, Costa Mesa, CA, for the plaintiff-appellant and intervenor-appellant. Patricia M. Lytle (brief), Law Offices of Herbert Hafif, Claremont, CA, for intervenor-appellant Melissa Tisdale.

Richard T. Waldow, Deputy Attorney General, Los Angeles, CA, for the defendants-appellees.

Before: PREGERSON, THOMPSON, and WARDLAW, Circuit Judges.

PREGERSON, Circuit Judge:

This appeal involves plaintiffs' motion for attorney's fees. Plaintiffs are developmentally disabled adults and residents of Fairview Developmental Center. On March 29, 1997, they brought suit under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the Civil Rights Act of 1871, 42 U.S.C. § 1983, against California's Department of Developmental Services ("DDS"). After three years of litigation, the parties entered into a settlement agreement.

In February 2001, plaintiffs asked the district court to determine that they were the "prevailing party," and thus entitled to an award of attorney's fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and the ADA, 42 U.S.C. § 12205. The district court determined that plaintiffs were the "prevailing party" to a limited extent based upon a settlement agreement and based upon a finding that plaintiffs' suit was the "catalyst" for legislative change. Before the court awarded attorney's fees, the United States Supreme Court decided *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In *Buckhannon,* the Court eliminated the "catalyst theory" as a basis for recovery of attorney's fees under the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 et seq., and the ADA, 42 U.S.C. § 12101 et seq. *Id.* at 610, 121 S.Ct. 1835. The district court reconsidered its earlier ruling and found that under *Buckhannon,* plaintiffs were not the prevailing party and denied them attorney's fees, costs, and reimbursement of expenses. Plaintiffs appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1989, nine-year old Bill Coffelt's negative behavior became unbearable: he was attacking his siblings and their friends, and breaking windows. Feeling there was no other option, Bill's parents placed their developmentally disabled son at the Sonoma Developmental Center. Two weeks later, when they brought their son home for a weekend visit, he had lost weight and had several bruises. He was disoriented and listless. Because there were no vacancies in community group homes for developmentally disabled children, Bill's parents returned their son to the developmental center. A year later, Bill's parents joined other parents and the organization Protection & Advocacy, Inc.[1] in filing suit to get developmentally disabled children out of institutions and back into the community. Four years later, in January 1994, Bill Coffelt was the named plaintiff in a class action settlement, the Coffelt Agreement, that revolutionized the care that developmentally disabled adults were entitled to receive in California. The Coffelt Agreement required that 2,000 developmentally disabled adults living in institutional state developmental centers be transferred to community residences.[2] Three years after the Coffelt Agreement was approved, plaintiffs/appellants ("plain-

---

1. Protection & Advocacy, Inc. is a non-profit legal organization working to protect, advocate for, and advance the human, legal, and service rights of persons with disabilities.

2. Bill, now an adult, is not a party to these proceedings. Bill now lives in a home provided by his parents and receives supportive living services.

tiffs") filed the action now before this court.

On March 29, 1997, plaintiffs brought suit in the United States District Court for the Central District of California under the integration mandate contained in 28 C.F.R. § 35.130(d) of Title II of the ADA, Title V of the ADA, and 42 U.S.C. § 1983. Plaintiffs sought injunctive relief against DDS, various developmental and regional centers throughout the state, and individual defendants in their official capacities (collectively "defendants").

Plaintiffs alleged that in implementing the Coffelt Agreement, DDS engaged in the practice of "client shopping"—i.e., selecting for transfer from Fairview and placing in the community those residents without guardians or conservators who might object to their transfer. In their complaint, plaintiffs listed published scientific studies that showed an increased rate of mortality in developmentally disabled adults living in the community compared with developmentally disabled adults living in developmental centers, like Fairview. Plaintiffs also identified transferred Fairview residents who had died, been injured, or injured and killed others—such as "RD," who, after being released from Fairview, walked through a glass window at the community residence he had been transferred to and died in a San Diego Emergency Room.

Pending trial, the district court issued a preliminary injunction, enjoining DDS and Fairview Developmental Center from releasing or transferring adult residents of Fairview "unless the individual: (1) has capacity to object to the release or transfer; (2) has authorized a representative in writing; or (3) is 'represented' during the course of the release decision making process." The district court determined that a person is represented if "he or she has (a) a conservator or (b) an involved family member."

On June 16, 1997, Protection & Advocacy ("intervenors") filed a motion to intervene. The district court granted the motion.

On March 24, 2000, after hearing cross summary judgment motions, the district court granted permanent injunctive relief on one of intervenors' claims. The permanent injunction prohibited DDS from enforcing its policy of not transferring to community residences any resident of a developmental center whose conservator or family member objected to community placement (the "parental objection" policy). Plaintiffs appealed the trial court's grant of the intervenors' permanent injunction, while also moving the district court to modify the injunction. The district court denied plaintiffs' motion without a hearing. After conferring with a Ninth Circuit Mediator, however, the parties executed a stipulation that modified the permanent injunction.

On March 30, 2000, Magistrate Judge Arthur Nakazato held a court-ordered settlement conference that resulted in a settlement. The key terms of the settlement agreement were stated on the record in open court, and the parties, or their authorized representatives, agreed that the key terms of the settlement agreement were binding and enforceable, just as if they had been reduced to writing.

On August 29, 2000, a fully-executed settlement agreement between plaintiffs, defendants, and intervenors was filed with the court. On January 18, 2001, U.S. District Court Judge Gary L. Taylor ordered the parties to comply with the provisions of the stipulation modifying intervenors' permanent injunction. On January 22, 2001, Judge Taylor entered judgment. The final judgment stated that the "parties ha[d] settled the[ ] remaining claims [not resolved by the court on summary judgment] and a settlement agreement was

filed with the Court," and that the parties' time for filing and serving their motions for attorney's fees and costs would begin from that day. Two days later, Judge Taylor signed the order of dismissal. The order stated that plaintiffs' remaining claims against the defendants were "dismissed with prejudice pursuant to a written executed Settlement Agreement between the parties, a copy of which has been previously filed with this Court, and which primary terms were placed on the record before Magistrate Judge, Honorable Arthur Nakazato.... IT IS SO STIPULATED.... IT IS SO ORDERED."

On February 5, 2001, plaintiffs filed their motion to determine prevailing party status and for an award of attorney's fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and the ADA, 42 U.S.C. § 12205.

On March 28, 2001, the district court ruled that plaintiffs were the prevailing party because they "prevailed to a limited extent through settlement of the case" and "may have acted as a catalyst for legislative change in accomplishing the relief sought." The court, however, ruled that plaintiffs were not prevailing parties on the permanent injunction because that "injunction was obtained by Intervenors, not Plaintiffs"; nor were plaintiffs the prevailing parties on the preliminary injunction they obtained because "it preserved the status quo and was not based on the merits of the claims." (Citing *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990)). The court ordered that the parties submit briefs on the amount of fees to be awarded.

Two months later, before the court awarded attorney's fees, the Supreme Court decided *Buckhannon*, eliminating the "catalyst theory" as a basis for recovery of attorney's fees under the FHAA and the ADA. 532 U.S. at 610, 121 S.Ct. 1835. Based on that decision, defendants

filed an ex parte application asking the district court to reconsider its ruling on the prevailing party issue.

On June 25, 2001, the district court vacated its previous order determining that plaintiffs were the prevailing party to a limited extent. Relying on dicta in *Buckhannon*, the court found that it had incorrectly relied on the catalyst theory and on a private settlement between the parties in determining that plaintiffs were the prevailing party. The court concluded that as plaintiffs "did not accomplish any of the relief [they] sought by a court order or a consent decree, Plaintiffs are not the prevailing party." The court denied plaintiffs attorney's fees, costs, and reimbursement of expenses.

Plaintiffs now appeal from the district court's "Order Granting Reconsideration and Vacating Order on Determination of Prevailing Party and Denial of Motion for Attorneys' Fees and Costs." Plaintiffs recognize that under *Buckhannon* and this court's decision in *Bennett v. Yoshina*, 259 F.3d 1097 (9th Cir.2001), they cannot recover attorney's fees under the catalyst theory; they do not challenge the portion of the district court's order determining that they are not prevailing parties under the catalyst theory. Rather, plaintiffs assert that under *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 98, 154 L.Ed.2d 28 (2002), the district court erred in ruling that plaintiffs were not the prevailing parties based on the settlement agreement. *Barrios*, 277 F.3d at 1134.

## II. STANDARD OF REVIEW

■ This court reviews for abuse of discretion a district court's decision to deny attorney's fees. *Barrios*, 277 F.3d at 1133. A district court abuses its discretion if its ruling on a fee motion "is based on an

inaccurate view of the law or a clearly erroneous finding of fact." *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir.1997) (quoting *Corder v. Gates,* 947 F.2d 374, 377 (9th Cir.1991)). Elements of legal analysis and statutory interpretation that figure into the district court's attorney's fees decision are reviewed de novo. *Fischer v. SJB P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir. 2000). Factual findings underlying the district court's decision are reviewed for clear error. *Id.*

## III. DISCUSSION

■ We are asked to determine whether the Supreme Court's decision in *Buckhannon* precludes courts from granting "prevailing party" status and reasonable attorney's fees and costs to plaintiffs under the ADA and 42 U.S.C. § 1988 when they reach a settlement agreement. We recently answered this question in *Barrios.* In *Barrios,* we held that a plaintiff "prevails," and thus is entitled to attorney's fees and costs, when he or she enters into a legally enforceable settlement agreement with the defendant. *Barrios,* 277 F.3d at 1134. Because we find that there is a legally enforceable settlement agreement between the parties to this case, the district court erred when it denied plaintiffs attorney's fees and costs. Moreover, we find that the district court erred when it denied plaintiffs prevailing party status based on their success in obtaining a preliminary injunction preventing DDS from releasing Fairview residents into community placements unless certain conditions were met. The district court did not err, however, in denying plaintiffs prevailing party status based on their efforts to modify intervenors' permanent injunction.

A. Legally Enforceable Settlement Agreement

■ In *Barrios,* we held that "[u]nder applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant":

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Id.* (alteration in original) (quoting *Fischer,* 214 F.3d at 1118 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–13, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992))). Because Barrios could enforce the terms of the settlement agreement against the California Interscholastic Federation, he was the "prevailing party." *Id.*

We concluded in *Barrios* that our decision was unaffected by the Supreme Court's recent holding in *Buckhannon* which eliminated the "catalyst theory" as a basis for the award of attorneys' fees under the ADA and FHAA. *Id.* at 1134 n. 5. "Barrios, [like the plaintiffs here], however, [did] not claim to be a 'prevailing party' simply by virtue of his being a catalyst of policy change; rather his settlement agreement afford[ed] him a legally enforceable instrument, which under *Fischer,* ma[de] him a 'prevailing party.'" *Id.* Although "the dictum in *Buckhannon* suggests that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree," we found that we were "not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer,* by which we are bound." *Id.* (citation omitted).

We noted in *Barrios* that "[m]oreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs." *Id.* Similarly, here, in stating the key terms of the settlement on the record on March 30, 2000, the parties "stipulate[d] that the Court retain jurisdiction to address any issue of attorneys' fees and costs that may be unresolved by the parties." The district court's retention of jurisdiction over the attorney's fees issue, "thus provid[ed] sufficient judicial oversight to justify an award of attorneys' fees and costs." *Id.*

Although similarities between *Barrios* and the present case abound, defendants attempt to distinguish the cases by arguing that Mr. Barrios achieved significant monetary and non-monetary relief on his claims whereas the plaintiffs in this case obtained nothing of significance. Here, however, the district court found that although the "settlement mandates are significantly less than the relief Plaintiffs sought ... [they] have achieved greater safeguards against inappropriate transfers to community placements and greater input from various health care professionals into the decisions to transfer consumers and the review by the Superior Court." This factual finding of the district court is not clearly erroneous. Thus, the district court did not abuse its discretion when it found that plaintiffs had "prevailed to a limited extent" and thus achieved relief significant enough to warrant prevailing party status.

■ The district court conducted the proper inquiry into whether plaintiffs were the prevailing party by examining whether they obtained "some relief on the merits of [their] claim that materially alter[ed] the legal relationship between the parties." (Citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)).[3] Contrary to the argument advanced by the defendants, prevailing party status is not determined by the degree of success achieved. Rather as stated above, prevailing party status is determined by inquiring whether plaintiffs' "actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Barrios*, 277 F.3d at 1134 (quoting *Fischer*, 214 F.3d at 1118). Just as in *Barrios*, the present settlement agreement materially altered the legal relationship between the parties, because the defendants were required to do something directly benefitting the plaintiffs that they otherwise would not have had to do. "By formalizing the requirement that Defendants give the Superior Court approximately two weeks notice and prohibiting a transfer if a hearing is granted," the district court concluded, "the settlement does 'materially alter[ ] the legal relationship between the parties.'" (Citation omitted).

■ Defendants also incorrectly argue that the settlement agreement is not a legally enforceable agreement, but rather a "purely private settlement agreement." Similarly, in denying plaintiffs attorney's fees, the district court relied on a footnote

---

**3.** The district court correctly found that the degree of overall success determines not whether the plaintiff is a prevailing party, as defendants argue, but rather whether the fee award is reasonable: "While the magnitude of success does not affect the 'prevailing party' status, 'the level of a plaintiff's success is relevant to the amount of fees to be awarded.'" (Quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The district court stated it would "award to Plaintiff a reasonable allocation of fees based on the limited degree of success achieved, as stated in this order."

in *Buckhannon* which stated that "[p]rivate settlements do not entail the *judicial approval* and *oversight* involved in consent decrees[,]" and that "*federal jurisdiction* to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Buckhannon,* 532 U.S. at 604 n. 7, 121 S.Ct. 1835 (emphasis added).

The settlement agreement in this case, however, is not a not "purely private settlement agreement." At the settlement conference on March 30, 2000, the parties stated the terms of the agreement on the record before Magistrate Judge Nakazato. The court, in a minute order, specifically and expressly stated that "the parties ... represented to the Court that they agreed and understood [that] the terms of the settlement agreement were *binding and enforceable* just as if they had been reduced to writing.... *IT IS SO ORDERED.*" (Emphasis added). The agreement was reduced to writing and was filed with the district court. The order of dismissal signed by Judge Taylor on January 24, 2001, expressly referred to the settlement agreement: the remaining claims were "dismissed with prejudice pursuant to a written executed Settlement Agreement ... which ha[d] been previously filed with [the] Court, and which primary terms were placed on the record" before Magistrate Judge Nakazato. The parties are bound by this settlement agreement. Furthermore, by stipulation of the parties, the district court retained jurisdiction to resolve the issue of attorney's fees and costs. *See Barrios,* 277 F.3d at 1134 n. 5.

Through their legally enforceable settlement agreement and the district court's retention of jurisdiction, plaintiffs obtained a " 'judicial imprimatur' that alters the legal relationship of the parties," as required by *Buckhannon. Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th

Cir.2002). Thus, we conclude that plaintiffs are entitled to prevailing party status, and we hold that the district court erred when it denied plaintiffs attorney's fees and costs. We reverse that portion of the district court's order finding that plaintiffs are not the "prevailing party to a limited extent" based on the settlement agreement. We further remand this case in light of our recent decision in *Barrios,* which held that a plaintiff prevails, and thus is entitled to attorney's fees and costs, when he or she enters into a legally enforceable settlement agreement against the defendant. *Barrios,* 277 F.3d at 1134.

### B. Preliminary Injunction

The district court found that plaintiffs' "success on their Preliminary Injunction cannot be the basis for 'prevailing party' status because it only preserved the status quo, and was not based on the merits of the claims." (Citing *Christopher P. v. Marcus,* 915 F.2d 794, 805 (2d Cir.1990); *Smith v. Thomas,* 687 F.2d 113, 115 (5th Cir.1982)). In reaching this conclusion, the district court relied solely on other circuit's conclusions and overlooked this court's findings in *Williams v. Alioto,* 625 F.2d 845 (9th Cir.1980).

In *Williams,* we held that a plaintiff who obtains a preliminary injunction is a prevailing party for purposes of 42 U.S.C. § 1988 even if the underlying case becomes moot:

We conclude that by obtaining the preliminary injunction appellees "prevailed on the merits of at least some of (their) claims." The preliminary injunction prevented appellants from continued enforcement of their original guidelines, which is precisely the relief appellees sought. Appellees succeeded on a "significant issue in litigation, which achieve(d) ... the benefit the parties sought in bringing suit." Our previous

dismissal of the appeal as moot and vacation of the district court judgment does not affect the fact that for the pertinent time period appellees obtained the desired relief. . . .

*Williams,* 625 F.2d at 847–48 (citations omitted). Furthermore, subsequent to the district court's ruling that plaintiffs were not the prevailing party based on their preliminary injunction, we held that "a plaintiff who succeeds in obtaining a preliminary injunction can be deemed a 'prevailing party' for purposes of 42 U.S.C. § 1988, even though he did not recover other relief sought in the lawsuit." *Watson,* 300 F.3d at 1093.

We therefore find that the district court erred as a matter of law when it denied plaintiffs prevailing party status based on their success in obtaining a preliminary injunction. We remand this issue in light of our statements of the law in *Williams* and *Watson.*

**C. Plaintiffs' Efforts in Modifying Intervenors' Permanent Injunction.**

■ The district court dismissed plaintiffs' claim that they were the prevailing party based on their successful efforts to modify the language of the intervenors' permanent injunction. In denying plaintiffs prevailing party status on this basis, the district court reasoned that "[t]he permanent injunction was obtained by Intervenors, not Plaintiffs, so Plaintiffs have not prevailed here."

We recently held that a "plaintiff can be awarded[attorneys'] fees incurred opposing intervention if the defendant . . . joined the intervenor's motion." *Watson,* 300 F.3d at 1097 (citation omitted). Here, however, the intervenors sought a permanent injunction against the defendants to prevent DDS from implementing its parental objection policy.

Thus, the district court did not err as a matter of law when it denied plaintiffs

prevailing party status based on their efforts to modify the intervenors' permanent injunction.

## IV. CONCLUSION

Because we conclude that the plaintiffs' attainment of both a legally enforceable settlement agreement and a preliminary injunction supports their status as the prevailing party and their entitlement to reasonable attorney's fees, we REVERSE in part and REMAND pursuant to our decisions in *Barrios, Williams,* and *Watson.* We AFFIRM, however, the district court's ruling that plaintiffs' efforts in modifying the intervenors' permanent injunction do not support prevailing party status. AFFIRMED in part; REVERSED in part; and REMANDED. Each side to bear its own cost.

