07-3167-cv
*Garcia v. Yonkers School District*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2008

Docket No. 07-3167-cv

Argued: November 14, 2008                    Decided: April 1, 2009

_____

CARLOS GARCIA, on his own behalf and on behalf of all those similarly situated,
BRUCE MERLO, on his own behalf and on behalf of all those similarly situated, and
LYCELIN POLANCO, on her own behalf and on behalf of all those similarly situated,

*Plaintiffs-Appellees*,

- v.-

YONKERS SCHOOL DISTRICT, ANGELO PETRONE, and ROCCO GRASSI,

*Defendants-Appellants*.*

_____

Before:  MINER, SOTOMAYOR, and KATZMANN, Circuit Judges.

Defendants-appellants appeal from a judgment of the United States District Court for the Southern District of New York (Robinson, J.) granting plaintiffs-appellees' motion for attorney's fees, the district court having found that (1) the defendants received adequate notice prior to the court's oral grant of a temporary restraining order and preliminary injunction; (2) the plaintiffs were prevailing parties under 42 U.S.C. § 1988(b) for purposes of awarding attorney's fees; and (3) the amount of time spent on the case and the hourly rate proposed by plaintiffs' counsel were appropriate and reasonable.

Reversed.

CHRISTOPHER D. WATKINS (Michael H. Sussman, on the brief), Sussman & Watkins, Goshen, New York, for plaintiffs-appellees.

JAMES P. DROHAN (Lawrence W. Thomas, on the brief), Donoghue, Thomas, Auslander & Drohan, LLP, Hopewell Junction, New York, for defendants-appellants.

_____

* The Clerk of Court is directed to amend the official caption as set forth above.

1

MINER, Circuit Judge:

Defendants-appellants Yonkers School District, Superintendent Angelo Petrone, and Principal Rocco Grassi (collectively, the "School District" or "Defendants") appeal from a judgment of the United States District Court for the Southern District of New York (Robinson, J.) granting a motion filed by counsel for the plaintiffs-appellees, Carlos Garcia, Bruce Merlo, and Lycelin Polanco (the "Individual Students"), on their behalf and on behalf of all similarly situated persons (collectively, the "Students" or "Plaintiffs"), seeking attorney's fees. The District Court found that (1) the School District received adequate notice prior to the court's oral grant of a temporary restraining order and preliminary injunction; (2) the Students were prevailing parties under 42 U.S.C. § 1988(b) for purposes of awarding attorney's fees; and (3) the amount of time spent on the case and the hourly rate proposed by the Students' counsel were appropriate and reasonable. For the reasons that follow, we reverse the judgment of the District Court granting attorney's fees.

I.     BACKGROUND

On September 10, 2004, the Individual Students and a number of other students walked out of Gorton High School in Yonkers, New York, during school hours and headed for Yonkers City Hall. At City Hall, the Students protested recent cuts to the budget of the Yonkers School District, the budget having been reduced by $26 million for the 2004–2005 school year. Apparently, a similar demonstration had proved effective at staunching the previous year's cuts to the Yonkers School District budget. According to the plaintiffs, none of the students who walked out of Gorton High School at the previous year's demonstration were penalized for their act of protest, although they had violated the rules against leaving school grounds during school hours. The Students, however, were classified as Level IV offenders for their departure from the school grounds. Level IV is the most serious disciplinary status and is reserved for those who engage in "violent" or "dangerous" conduct. Based on this classification, the School District imposed upon the Students a five-day period of suspension.

On September 15, 2004, after having served two of the five days' suspension, the Students filed a complaint and an order to show cause in the District Court citing violations of

their First Amendment rights and requesting, <u>inter alia</u>, that the court "temporarily, preliminarily and permanently enjoin [the School District]" from imposing the suspensions on them. A hearing was scheduled to be held on the noon of that same day to address the "order to show cause or temporary restraining order brought on by Garcia, et al." The School District was notified of the hearing by telephone that morning. As the School District's counsel was entering the court to attend the hearing, he was provided with the Students' memorandum of law in support of the temporary restraining order and preliminary injunction, excerpts from the Yonkers Public School Code of Conduct (the "Code of Conduct"), one of the disciplinary review forms utilized by the School District in connection with the suspensions, and ten affidavits. The hearing commenced at noon, and the School District's counsel noted at the beginning of his statement: "I haven't had a chance to review — completely review the papers yet, but I do have some comments here." The District Court acknowledged the lack of preparation time afforded to the School District's counsel in its colloquy with counsel: "And I know you haven't had a chance to read [the affidavits] fully." Both defendants Superintendent Angelo Petrone and Principal Rocco Grassi were present at the hearing.

The District Court focused mainly on the punishment imposed on the Students for their actions in derogation of the Code of Conduct. The District Court noted that the Students were punished for a Level IV disciplinary action despite the Code of Conduct providing for a Level II — and, at most, a Level III — disciplinary action for a student leaving school grounds during school hours. The District Court summarized its concern in a rhetorical question:

> [Level IV punishes] [u]se of a weapon. Possession of a weapon. . . . Assault. Menacing. Selling, giving or delivering alcoholic beverage. . . . Defacing, vandalizing or destroying property. Possession or use of fireworks, poppers, smoke or stink bombs, et cetera.. . . . Engaging in the offense of retaliation against any school employee. Any felony as defined by the criminal justice system. Bomb threats or terrorist threats. Sexual offenses. Theft, burglary. False alarm; that is, falsely activating a fire alarm.
> How is this [walk out by the Students] a Level IV?

In response, the School District's counsel seemed to concede that the Students' conduct did not amount to a Level IV violation. Later during the hearing, however, Principal Rocco Grassi explained that the Students' walk-out rose to the level of "violent and dangerous" conduct

3

because of the confluence of several factors: (1) the Students walked out despite repeated warnings not to do so; (2) the Students "push[ed] past security" and "plac[ed] themselves in danger out on the street"; and (3) several of the students who walked out returned and "assembled alongside of the [school] and were chanting . . . to their fellow students: 'Break out.'"

Unpersuaded by the testimony of Principal Rocco Grassi, the District Court found that the Students had shown a likelihood of success on their First Amendment claim that they were improperly punished for exercising protected speech.[1] The District Court suggested, however, that the School District could prevail if it could present evidence that the imposition of a Level IV disciplinary action applied to all walk-outs and not only to the Students' walk-out in their exercise of protected speech. In an apparent conclusion, the District Court stated: "So I'm going to grant the temporary restraining order. Here is what I will do. And preliminary injunction. I will sign it in a few moments." But the District Court then immediately stated that it would provide an opportunity to the School District to put forth evidence at another hearing, if requested, "early next week" so that "we can . . . get a definitive ruling on this quickly." At no time did the District Court make written findings or sign a preliminary injunction or temporary restraining order.

On September 22, 2004, the School District informed the District Court that it "does not request a hearing" but would "request the opportunity to submit responsive papers on the [Students'] application for an injunction." Thereafter, the School District filed a memorandum in opposition to the Students' request for a temporary restraining order and preliminary injunction, and the Students filed a reply memorandum in response to the School District's opposing memorandum. Subsequent to the hearing, the Students were not subject to continued or further suspensions relating to the September 10, 2004 protest beyond the two days served; however, the Level IV notation remained on the Students' disciplinary records.

---

[1] The District Court also found that "there is irreparable harm" because the Students' records would be tarnished by a Level IV offense for violent and dangerous conduct, which would affect their future educational and professional opportunities.

4

By mid-year of 2006, the District Court still had not made a ruling on the arguments made in the parties' memoranda. In June and July of 2006, after the Students graduated from Gorton High School, counsel for the Students wrote the School District, asking it to "resolve this case." Counsel did not receive a response from the School District. On December 7, 2006, counsel filed with the District Court a notice of a motion for attorney's fees and costs, claiming that he was entitled to fees and costs because the Students were "prevailing parties" under 42 U.S.C. § 1988. Counsel based his argument on the theory that the District Court's grant of the temporary restraining order "ripen[ed] into a preliminary injunction." After submission of a written opposition by the School District and a reply by counsel, the District Court granted counsel's application for attorney's fees and costs in a published decision and order. See Garcia v. Yonkers Sch. Dist., 499 F. Supp. 2d 421, 426 (S.D.N.Y. 2007).

In its published decision and order, the District Court stated that it had granted the Students' request for a temporary restraining order and preliminary injunction at the September 15, 2004 hearing. Id. at 423–24. In so concluding, the District Court referred to its own statement at the hearing: "I'm going to grant the temporary restraining order. Here is what I will do. And preliminary injunction. I will sign it in a few moments." Id. at 424. The District Court then explained that it was not precluded by Fed. R. Civ. P. 65(a)(1) from entering a preliminary injunction against the School District because the School District had adequate notice and a "fair opportunity" to oppose the request for a preliminary injunction at the September 15, 2004 hearing. Id. The District Court referred to the School District's counsel's appearance at the hearing "accompanied by named Defendants Petrone and Grassi" and noted that the School District "presented an argument in support of [its] position." Id.

Having concluded that a preliminary injunction had been entered, the District Court stated that the entry of that injunction was a sufficient basis for granting the attorney's fees. Id. at 425. The District Court explained that its grant of a preliminary injunction was based on the merits of the Students' First Amendment claims and, thus, "created a material alteration in the legal relationship of the parties to this case." Id. The District Court observed that, consistent with the

5

entry of a preliminary injunction, the School District did not attempt to continue the suspension of the Students after the September 15, 2004 hearing. See id. at 425–26. The District Court thus concluded that the Students were "prevailing parties" under 42 U.S.C. § 1988(b), and, therefore, that their counsel was entitled to attorney's fees and costs. See id.

To the extent the amount of attorney's fees was concerned, the District Court found that the fees sought were appropriate and reasonable in light of counsel's highly qualified background and experience in civil rights litigation. Id. at 426. The District Court also found no error in counsel's computation of the time expended on the case. Id. Accordingly, the District Court ordered the School District to pay attorney's fees and costs in the amount of $10,487.50. Id. Judgment was entered in due course, and this timely appeal followed.

II.    DISCUSSION

A.    Standard of Review

We review the district court's grant of attorney's fees for abuse of discretion. See Auto. Club of N.Y., Inc. v. Dykstra, 520 F.3d 210, 217 (2d Cir. 2008). Inasmuch as the resolution of the district court's grant of attorney's fees implicates questions of law, our review is de novo. See Williams v. Beemiller, Inc., 527 F.3d 259, 264 (2d Cir. 2008) (stating that questions of statutory construction, including the district court's interpretation of the Federal Rules of Civil Procedure, are reviewed de novo (citations omitted)).

B.    Attorney's Fees Under Section 1988(b)

Section 1988(b) permits reasonable attorney's fees and costs to be awarded to a "prevailing party" in any action or proceeding in connection with enforcing the provisions of 42 U.S.C. § 1983. See 42 U.S.C. § 1988(b). The Supreme Court has held that a "prevailing party" is one who has favorably effected a "material alteration of the legal relationship of the parties" by court order. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001) (quoting Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792–93 (1989)); see also Vacchio v. Ashcroft, 404 F.3d 663, 674 (2d Cir. 2005); see also Black's Law Dictionary 1154 (8th ed. 2004) (defining "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded"). Thus, for

6

example, the entry of an enforceable judgment, such as a stay or preliminary injunction, may permit the district court to confer prevailing-party status on the plaintiff notwithstanding the absence of a final judgment on the underlying claim.[2] See Vacchio, 404 F.3d at 674 ("[S]tatus as a prevailing party is conferred whenever there is a court ordered change in the legal relationship between the plaintiff and the defendant or a material alteration of the legal relationship of the parties." (citing Pres. Coalition of Erie County v. Federal Transit Admin., 356 F.3d 444, 452 (2d Cir. 2004) (alterations and internal quotation marks omitted))); Haley v. Pataki, 106 F.3d 478, 483–84 (2d Cir. 1997) (awarding attorney's fees pursuant to § 1988(b) to party prevailing on preliminary injunction).

Although "prevailing party" is thus construed broadly, a plaintiff is not a "prevailing party" if he or she "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 532 U.S. at 601, 605. The Supreme Court has explained that such a voluntary change in defendant's conduct "lacks the necessary judicial imprimatur on the change" to accord prevailing-party status to the plaintiff. Id. at 605. Moreover, a plaintiff who secures interim relief that is later "reversed, dissolved, or otherwise undone by the final decision in the same case" is not a prevailing party. Sole v. Wyner, 127 S. Ct. 2188, 2195 (2007); see id. at 2192 ("A plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded.").

With these legal principles in mind, we conclude that attorney's fees were erroneously granted because the Students were not, in fact, "prevailing parties." The District Court did not issue a preliminary injunction or a temporary restraining order at the September 15, 2004 hearing, and, therefore, there was nothing that could serve as a basis for conferring prevailing-party status on the Students. Further, even if the District Court had granted the Students' request for a temporary restraining order, the Students were not prevailing parties because the court never finally addressed the merits of the Students' underlying First Amendment claim.

---

[2] It is undisputed that no final judgment on the underlying First Amendment claim was entered in this case. See Garcia, 499 F. Supp. 2d at 425.

7

### 1. The Preliminary Injunction

A district court's interpretation of its own order is generally reviewed for abuse of discretion. See United States v. Spallone, 399 F.3d 415, 423 (2d Cir. 2005) ("When an issuing judge interprets his own orders, we accord substantial deference to the draftsman, and we will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion."). Nonetheless,

> we do not give equal deference to every aspect of a court's decision. The abuse of discretion standard is used to evaluate the . . . court's application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and de novo standards, respect[ively].

Matter of VMS Sec. Litig., 103 F.3d 1317, 1323 (7th Cir. 1996) (internal quotation marks omitted). Accordingly, we review de novo the legal question of whether the district court issued a preliminary injunction or restraining order in satisfaction of Fed. R. Civ. P. 65. See United States v. Camacho, 370 F.3d 303, 305 (2d Cir. 2004) (reviewing de novo whether a criminal judgment is final for purposes of Fed. R. Crim. P. 33).

Here, notwithstanding the District Court's conclusion in retrospect that it had granted the preliminary injunction at the September 15, 2004 hearing, it is unclear upon our review of the transcript whether the District Court intended to grant the injunction at the hastily convened hearing. To be sure, the District Court stated at one time that it was "going to grant the temporary restraining order. Here is what I will do. And preliminary injunction. I will sign it in a few moments." In the context of the entire proceedings, however, the meaning of this plain statement is complicated by various findings and comments by the District Court made before and after the "granting" of the injunction and/or restraining order. See Spallone, 399 F.3d at 424 (stating that this Court examines the "entire record for the purpose of determining what was decided" (internal quotation marks omitted)).

The transcript of the hearing reveals that, on the one hand, the District Court thought that the Students' First Amendment claims were meritorious in light of the disproportionate Level IV punishment imposed on the Students for an infraction that should have placed them at Level II or, at most, Level III. On the other hand, the District Court also noted that it was appropriate for

the School District to punish the Students for violating the Code of Conduct and, in fact, that the School District may prevail in opposing the injunction if it could show that a Level IV punishment is the ordinary disciplinary action taken against all students who leave school grounds during school hours.

Adding to the ambivalence of the District Court's opinion on the merits of the case, the District Court informed the School District immediately after stating that it was "going to grant the temporary restraining order. . . . [a]nd preliminary injunction" (emphasis added) that the School District would be given an opportunity to present evidence "early next week" so that "we can . . . get a definitive ruling on this quickly." Despite its earlier indication that it would do so, it is noteworthy that the District Court did not sign either a temporary restraining order or a preliminary injunction order. Thus, it is apparent that the District Court ultimately decided against entering a preliminary injunction at the September 15, 2004 hearing. We also note that even the Students' counsel believed that the District Court had not entered a preliminary injunction at the hearing, as made clear in his motion for attorney's fees. In that motion, counsel did not argue that a preliminary injunction had issued; rather, he argued that the temporary restraining order "ripen[ed] into a preliminary injunction."

Most significantly, the purported preliminary injunction was lacking in the required form and content. Rule 65(d)(1) of the Federal Rules of Civil Procedure requires every injunction and restraining order to:

> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required.

In this case, the District Court's statements at the hearing do not describe in reasonable detail the extent of the acts restrained, such as whether the School District would be restrained from imposing a lesser punishment. In this respect, it is noted that the School District was not ordered to expunge from the Students' educational records the Level IV notations at issue. See Petrello v. White, 533 F.3d 110, 114 (2d Cir. 2008) ("[Rule 65(d)] reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an

9

enjoined party may unwittingly and unintentionally transcend its bounds." (internal quotation marks omitted)); Rosen v. Siegel, 106 F.3d 28, 32 (2d Cir. 1997) ("[Rule 65(d)] is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing." (quoting Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd., 824 F.2d 665, 669 (8th Cir. 1987) (internal quotation marks omitted))). Further, although the District Court remarked at some length on the merits of the Students' First Amendment claim, it was ultimately interested in awaiting further facts before making any factual determinations:

> So, I'm troubled. So I think that, as I've said, I think there is irreparable harm. And I think that there is a likelihood of success on the underlying case that the desire of the school to punish this particular kind of speech was – and this particular activity, even if it's one that they agreed with, but they didn't want these students to do it — I would be interested — and I'll say in a minute what I'm going to do here. If counsel wants to produce for me indications where other students who left during the school day — I have been informed by counsel that, in the previous academic year, numbers of students left, I take it for this very same type of activity. If they were given Level IV disciplinary punishment, that would persuade me that, at least with respect to this activity, they always do it.

Thus, no specific findings of facts were made to support the District Court's "grant" of the preliminary injunction as is required. See Fed. R. Civ. P. 65(d)(1); see also Fed. R. Civ. P. 52(a)(2) (stating that a court must "state the findings and conclusions that support its action" when granting or refusing an interlocutory injunction). Requirements for the form and content of preliminary injunctions and temporary restraining orders are properly met by a written order, a document lacking here. See, e.g., Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) ("Federal Rule of Civil Procedure 65(d), which provides the standards for the form and scope of injunctions, contemplates the issuance of a written order."); Bates v. Johnson, 901 F.2d 1424, 1427 (7th Cir. 1990) ("Oral statements are not injunctions.").

Compounding the District Court's failure to comply with Rule 65(d) is the lack of adequate notice given to the School District to oppose the preliminary injunction. Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." This provision has been construed to require the district court to "allow [the adverse] party sufficient time to marshal his evidence and present his

10

arguments against the issuance of the injunction," i.e., the adverse party must be afforded a "fair opportunity" to oppose the preliminary injunction. See Rosen, 106 F.3d at 31 (quoting Weitzman v. Stein, 897 F.2d 653, 657 (2d Cir. 1990) (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949, at 468 (1973))); e.g., Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc., 446 F.2d 353, 355–56 (5th Cir. 1971) (considering the complexity of the case and the substantial volume of submitted evidence in concluding that a week was insufficient time to afford the adverse party a fair opportunity to oppose the preliminary injunction).

Here, the facts clearly show that the School District did not have a fair opportunity to oppose the entry of the preliminary injunction at the hearing. The hearing was held at noon on the same day the plaintiffs filed their complaint. The plaintiffs' legal memorandum and supporting evidence — which included 10 affidavits, an excerpt of the Code of Conduct, and a disciplinary review form — were handed to the School District's counsel as he was entering the court to attend the hearing. Thus, there was insufficient time for the School District to undertake a proper review of the Students' claims. Cf. All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1538 (11th Cir. 1989) (in complex antitrust action requiring precise presentation of "numerous facts," finding that two-days' notice and oral presentations limited to thirty minutes "can hardly be said to constitute a meaningful opportunity to oppose appellees' motion for preliminary injunction").

Indeed, the School District's counsel was without doubt unprepared for the hearing through no fault of his own. He was unfamiliar with his client's position on the case and, at various times during the hearing, had to confer with his clients about basic questions posed by the District Court. For example, at one point, counsel for the School District contradicted his client's position on the critical — but basic — issue of whether the Students' conduct constituted a Level IV disciplinary action. Accordingly, considering the shortness of the time afforded to the School District to absorb the legal allegations made against it, and counsel's actual unpreparedness resulting from such lack of time, we conclude that adequate notice was not

11

provided in this case as required by Rule 65(a).

Therefore, in light of the foregoing, we hold that no preliminary injunction was entered in this case. The District Court thus erred when it granted attorney's fees based on the existence of a preliminary injunction.

## 2. The Temporary Restraining Order

Unlike a preliminary injunction, a temporary restraining order is not constrained by Rule 65(a)'s requirement of notice to the adverse party. See Standard Microsystems Corp. v. Texas Instruments, Inc., 916 F.2d 58, 62 (2d Cir. 1990) ("Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm." (citing Fed. R. Civ. P. 65)). For many of the reasons discussed supra Part II(B)(1), however, we conclude that the District Court's statements at the September 15, 2004 hearing did not constitute a temporary restraining order because they did not detail the acts restrained or required and were not reduced to a written order. See Fed. R. Civ. P. 65(d)(1) (providing specificity requirements applicable to restraining orders); 65(b)(2) (requiring temporary restraining order issued without notice to adverse party or its counsel to "be promptly filed in the clerk's office and entered in the record"); cf. Lau, 229 F.3d at 123. Furthermore, the District Court failed to explain why the ruling should have been issued without adequate notice. See Fed. R. Civ. P. 65(b)(2). Regardless, even if a temporary restraining order had issued, such an order was not a "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Buckhannon, 532 U.S. at 604 (internal quotation marks omitted).

We have previously suggested that a grant of a plaintiff's request for a temporary restraining order may be sufficient grounds to grant attorney's fees to the plaintiff pursuant to 42 U.S.C. § 1988(b). See, e.g., LaRouche v. Kezer, 20 F.3d 68, 74 (2d Cir. 1994) (citing Christopher P. v. Marcus, 915 F.2d 794, 804–05 (2d Cir. 1990). In so suggesting, however, we have explicitly rejected claims for attorney's fees where the temporary restraining order merely maintained the status quo. See, e.g., Christopher P., 915 F.2d at 805 ("[T]he procurement of a [temporary restraining order] in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient

12

to give a plaintiff prevailing party status."); cf. Vacchio, 404 F.3d at 673 (holding that prevailing party status may be conferred by "interim judicial relief that alters the parties' legal relationship"); LaRouche, 20 F.3d at 74–75 (holding that "a grant of provisional relief that merely preserves the status quo" does not merit an award of attorney's fees).

Here, although the District Court referred to the Students' "likelihood of success on the underlying case" before orally stating that it would grant their request for a temporary restraining order and preliminary injunction, it is unclear whether the District Court intended to grant the temporary restraining order based on the finding of a likelihood of success on the merits of the case. In this connection, we note that a temporary restraining order serves a purpose different from that of a preliminary injunction. "The purpose of a temporary restraining order is to preserve an existing situation in statu quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter, 306 F.2d 840, 842 (2d Cir. 1962); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951, at 253 (2d ed. 1995) ("The [temporary restraining order] is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction . . . ."). Unless extended, even a temporary restraining order properly issued without notice to the adverse party or its counsel expires within no more than ten days after entry. Fed. R. Civ. P. 65(b)(2). There is no claim that any extension was granted here. See Garcia, 499 F. Supp. 2d at 423 (observing that the district court "took no formal action" on the submitted memoranda, one of which included a request to extend the temporary restraining order).

As explained above, the District Court reneged on its initial determination to grant the preliminary injunction by indicating that a "definitive ruling" would be made after further evidence by the School District was submitted. No preliminary injunction was signed despite the District Court's prior statement that it would do so. Thus, assuming arguendo that a temporary restraining order was granted at the September 15, 2004 hearing, the District Court would have granted the temporary restraining order only to preserve the status quo — i.e., permit the Students to continue attending school — until after the presentment of further evidence on the

merits of the Students' claims to determine the propriety of granting their request for a preliminary injunction. See Christopher P., 915 F.2d at 805 (holding that plaintiffs "cannot be said to have prevailed on the basis of the [temporary restraining order]" because it "simply preserve[d] the status quo" by directing the State of Connecticut to re-admit plaintiff to its school). Under the circumstances, any temporary restraining order that the District Court might have granted would not have been based on the merits of the Students' underlying First Amendment claim. Accordingly, even if the District Court had granted the Students' request for a temporary restraining order, such a grant could not serve as an alternative basis for according them prevailing-party status for purposes of granting attorney's fees.

3. The School District's Decision Relating to Further Suspensions

We are unpersuaded by the Students' remaining argument that they are prevailing parties because they did not receive further suspensions subsequent to the September 15, 2004 hearing. The record amply supports the School District's characterization that its decision not to further suspend the Students was voluntary. Thus, because a voluntary change in behavior after the filing of the lawsuit is insufficient to confer prevailing-party status for purposes of granting attorney's fees, see Buckhannon, 532 U.S. at 605 (holding that a voluntary change in behavior occurring after the filing of the lawsuit does not confer prevailing-party status on the plaintiffs), we reject the Students' argument as without merit.

Until the District Court's 2006 decision, both the Students and the School District believed that no preliminary injunction had issued at the September 15, 2004 hearing. And because we conclude that there was no valid preliminary injunction issued, the only order made in this case, arguendo, was the temporary restraining order. However, even assuming that a temporary restraining order was entered at the September hearing, there was no court order that could have prevented the School District from suspending the Students between October 2004 and until the Students' graduation in June 2006. See Vacchio, 404 F.3d at 674 ("[S]tatus as a prevailing party is conferred whenever there is a court ordered change in the legal relationship between the plaintiff and the defendant or a material alteration of the legal relationship of the

14

parties." (alterations and internal quotation marks omitted) (emphasis added)). The School District's act of not suspending the Students was, therefore, entirely voluntary. Accordingly, the School District's voluntary change in behavior cannot serve as the basis for conferring prevailing-party status to the Students for purposes of granting attorney's fees.

III.  CONCLUSION

For the foregoing reasons, the judgment of the District Court is REVERSED.