13-2529-cv
*Mastrio v. Sebelius, Secretary of Health and Human Services*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: April 24, 2014                                    Decided: September 17, 2014)

Docket No. 13-2529-cv

_____

EILEEN MASTRIO, Administrator for EILEEN PRENDERGAST, deceased,

*Plaintiff-Appellee*,

-*v.*-

KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES,

*Defendant-Appellant.*

_____

Before:            WALKER, HALL, *Circuit Judges*, and MURTHA, *District Judge.**

_____

On appeal from a judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) awarding $78,914.54 in attorneys' fees and costs to Plaintiff-Appellee under the Equal Access to Justice Act.  We hold that the TRO in this case effected only a return to the status quo and plaintiff was therefore not a prevailing party.  We further hold that the TRO was not a determination on the merits of the Plaintiff's case.  The judgment is REVERSED.

_____

GIL DEFORD, (ALICE BERS, *on the brief*), Center for Medical Advocacy, Inc., Willimantic, Connecticut, *for Plaintiff-Appellee.*

---

* The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

MICHAEL E. ROBINSON, (STUART F. DELERY, Deputy Assistant Attorney General for the District of Connecticut and MICHAEL JAY SINGER, *on the brief*), Civil Division, Office of Immigration Litigation, Washington, D.C. *for* DEIRDRE M. DALY, United States Attorney for the District of Connecticut, New Haven, Connecticut, *for Defendant-Appellant*.

———————————

PER CURIAM:

Defendant-Appellant Kathleen Sebelius, the Secretary of Health and Human Services ("the government"), appeals the May 2, 2013 judgment of the district court awarding attorneys' fees and costs in favor of Plaintiff-Appellee Eileen Mastrio, as administrator for Eileen Prendergast (deceased) ("Plaintiff").[1] Specifically, the government appeals the determination of the District Court for the District of Connecticut (Arterton, *J.*) that the issuance of a temporary restraining order ("TRO"), reinstating Prendergast's home health care benefits, conferred on her "prevailing party" status for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). For the reasons that follow, we reverse the judgment of the district court.

## BACKGROUND

Eileen Prendergast ("Prendergast"), now deceased, was suffering from Amyotrophic Lateral Sclerosis and receiving home health care services under a Medicare Advantage insurance policy offered by Aetna Life Insurance Company ("Aetna"), when in June 2008, despite physicians' signed orders to the contrary, Aetna concluded that her medical condition had stabilized and thus terminated her home health care benefits. The following

---

[1] Although the district court did not issue a separate order indicating that its May 2, 2013 order was a final judgment, it effectively ended adjudication on the merits of plaintiff's attorneys' fees request, and thus provided jurisdiction for the Secretary's appeal. *See* Fed. R. App. P. 4(a)(7)(B).

2

month, on July 31, 2008, Prendergast brought an action for emergency relief in the district court to enjoin the government from continuing to deny coverage of her home health care services under Medicare Part C. The next day, the district court (Nevas, *J.*) held a TRO hearing during which it acknowledged the government's inability to contest the merits at that time yet expressed its strong view that Prendergast would suffer irreparable harm without the imposition of the relief sought. The district court further concluded that "it would make more sense . . . to base the granting of the TRO" on the movant's ability to identify "sufficiently serious questions going to the merits, to make them a fair ground for litigation" as opposed to "a likelihood of success on the merits." Immediately after the hearing, the district court issued a TRO enjoining the government until August 18, 2008 from continuing to deny coverage of Prendergast's home health care services, on the grounds that she "will suffer irreparable harm if she continues to be deprived of the home health care coverage" and that she had shown "sufficiently serious questions going to the merits to make them a fair ground for litigation." That order also stated:

> [T]he skilled nursing care available through the home health services authorized by defendant's Medicare Part C program is medically reasonable and necessary and . . . she is eligible for that care. Her eligibility is demonstrated both because the Secretary is incorrect to view her condition as stable and because the strict [stability] standard applied by the Secretary is contrary to Medicare policy and, in judging her need for skilled nursing care for her unique situation, it is apparent, as her doctors have shown, that she needs skilled nursing care.

JA 38-39.[2] As a result, the government reinstated Prendergast's benefits and later extended her coverage through September 4, 2008.

---

[2] The actual order mistakenly used the word "liability" instead of "stability," but the parties agree that "stability" was intended.

3

As Prendergast's physical condition continued to decline, she moved on August 22 for an extension of the TRO and for a preliminary injunction. The government agreed to an extension of coverage until September 18, and the hearing scheduled for September 4 concerning a pending motion for extension of the TRO was removed from the district court's calendar. The government then filed a motion to dismiss the case on September 2. On September 12, prior to the preliminary injunction hearing scheduled for that date, the parties met with Judge Nevas, and the government agreed to extend coverage until October 10, 2008. The hearing on the preliminary injunction motion, therefore, was also removed from the court's calendar.

During the following month, more discussions between the parties led to an indefinite extension of coverage. Although there was no formal, written, or binding settlement, an October 17 e-mail "report" written by one of Prendergast's attorneys reflects that, as agreed by the parties, Prendergast found a doctor at Aetna who was willing to continue to authorize the home health care services. The email also thanked the Assistant U.S. Attorney for "all [his] efforts in helping us reach this settlement." Dist. Dkt. No. 55. As a result of the continuation of coverage, the pending motions were temporarily set aside. The Joint Statement of Counsel, filed at the district court's direction on December 30, also summarized an agreement that Prendergast's care would continue. Finally, during a January 13, 2009 status conference, the "[p]arties and court agreed to postpone ruling on [the] pending motions." Dist. Dkt. No. 30.

In February 2009, the case was reassigned to Judge Arterton. Following the reassignment, the parties agreed to withdraw their pending motions, without prejudice to

renewal at any time. The parties also agreed that the case would be administratively dismissed but could be reopened as of right upon motion of either party. Prendergast's counsel continued to monitor the situation to ensure that Prendergast received the coverage and care that was authorized by her doctor. Coverage continued until her death on December 14, 2010.

After Prendergast died, the case was restored to the court's active docket via a motion to reopen that was granted over the government's objection. Eileen Mastrio ("Mastrio"), Prendergast's daughter and the administrator of her estate, was substituted as Plaintiff. After the district court granted the parties' consent motion to dismiss, Mastrio moved, on August 19, 2011, for an award of fees, expenses and costs under the EAJA. The district court referred Mastrio's motion to Magistrate Judge Margolis who determined that Mastrio was entitled to her reasonable attorneys' fees and costs in the amount of $33,552.54 as a prevailing party under the EAJA. *Mastrio ex rel Prendergast*, JBA-08-1148, 2011 WL 5078240, at \*16 (D. Conn. Oct. 26, 2011). Both parties filed timely objections.

On March 29, 2013, the district court granted Mastrio's motion for attorneys' fees in part, and adopted a modified version of Judge Margolis's ruling. *Mastrio v. Sebelius*, JBA-08-1148, 2013 WL 1336838 (D. Conn. Mar. 29, 2013). Specifically, the district court awarded Mastrio $74,245.64 in attorneys' fees and $835.50 in costs, for a total of $75,081.14. In reaching this decision, the district court held that Mastrio was a prevailing party under the EAJA for two reasons: (1) Judge Nevas assessed the merits of her claims in granting the TRO, and (2) because the TRO compelled the government to restore Prendergast's benefits, it necessarily altered the relationship between the parties. The district court further

5

concluded that the government could not have met its burden of showing that its underlying position was "substantially justified." Mastrio moved for reconsideration, arguing that the district court failed to account for the total number of hours worked by one of Prendergast's attorneys in 2011 and 2012, as well as the total amount of Mastrio's costs. The motion was unopposed and, on May 2, 2013, the district court, recognizing that it had "inadvertently excluded" the amounts referenced, granted Mastrio's motion for a total award of $78,914.54 in attorneys' fees and costs. The government filed a timely appeal.

## DISCUSSION

On appeal, the government challenges the district court's judgment awarding EAJA attorneys' fees and costs to Plaintiff on the ground that a TRO can never be the basis for prevailing party status. Further, even if a TRO could have that effect, the government contends that the TRO in this case would not meet the necessary standard. Conversely, Plaintiff argues that, under this Court's precedent, entry of a preliminary injunction or a TRO in favor of a party is a basis for determining that the party is a prevailing party for purposes of the EAJA. Because a TRO did issue in this case, Plaintiff contends that she is a prevailing party and therefore entitled to an award of attorneys' fees and costs under the EAJA.

In general, we review a trial court's decision to award attorneys' fees to a prevailing party under an abuse of discretion standard. *See Pierce v. Underwood*, 487 U.S. 552, 571 (1988); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a

6

legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 165 (2d Cir. 2005) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).  Because it is a legal question, we review *de novo* a district court's determination that a plaintiff is a "prevailing party" under the EAJA.  *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . ."  28 U.S.C. § 2412(d)(1)(A).  In this case, therefore, "[t]he attorneys' fees question [first] turns . . . on . . . whether plaintiff is a 'prevailing party.'"  *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994) (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980)).

A plaintiff receiving interim injunctive relief may be a prevailing party where she "prevailed on the merits at the interim stage."  *Id.*  But where "the relief [does] not result from a determination on the merits . . . plaintiff[ ] [does] not prevail." *Id.* Making this "determination . . . 'requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief.'"  *Haley*, 106 F.3d at 483 (quoting *LaRouche*, 20 F.3d at 72).  With respect to TROs, we have stated that "[t]he standard for granting [such relief] requires a finding of immediate and irreparable injury but not a specific determination as to the merits.  Thus, . . . 'the procurement of a TRO in which the court does not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status.'"  *LaRouche*, 20

7

F.3d at 74 (quoting *Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990)) (citation omitted).

In this case, the district court's TRO neither altered the status quo nor resulted from a determination on the merits of Prendergast's claims. Plaintiff argues that the TRO did not preserve the status quo because it compelled the government to reinstate Prendergast's home health care benefits. This does not comport with our understanding of the term "preserve the status quo" in the preliminary injunction or TRO context. The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *Id.* at 74 n.7 (alteration in original) (quoting *Black's Law Dictionary* 1410 (6th ed. 1990)) (internal quotation marks omitted). Preserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action:

> To preserve the status quo a court may require the parties to act or to refrain from acting. For example, in *Christopher P.*, the TRO that "simply preserve[d] the status quo" directed the State of Connecticut to readmit plaintiff to its school for mentally disturbed children after having discharged him. [*Christopher P.*, 915 F.2d at 805.] Likewise, in *Bly v. Mcleod*, 605 F.2d 134 (4th Cir. 1979) . . . , a TRO requiring the State of South Carolina to allow plaintiffs to vote by absentee ballot was considered merely a preservation of the status quo.

*LaRouche*, 20 F.3d at 74 (first alteration in original) (footnote omitted). If Plaintiff's theory were correct—that ordering the reinstatement of recently terminated benefits altered the status quo—then the TROs in *Christopher P.* and *Bly* should have been treated as changing the status quo because the school and the state, respectively, were required to alter the positions they had taken that led to the controversies before the court. The rationales of *Christopher P.* and *Bly*, however, are fatal to Plaintiff's argument.

8

Plainly the status quo–the last peaceable uncontested status preceding the present controversy–was Aetna's payment of benefits to Prendergast. The TRO here restored the status quo; it did not alter it. *Garcia v. Yonkers School District*, 561 F.3d 97, 99-101 (2d Cir. 2009), is illustrative. In *Garcia*, students were suspended for five days by their school after staging a walk-out in protest of recent budget cuts. *Id.* at 99. After the students had "served two of the five days' suspension," the district court ordered the school to reinstate them. *Id.* at 100-01. In light of this ruling, plaintiff students later sought an award of attorneys' fees and costs as prevailing parties under 42 U.S.C. § 1988(b). *Id.* at 102-03. The district court granted the motion. We reversed, however, and held that, assuming *arguendo* that a TRO[3] had been granted, such order was issued "only to preserve the status quo—i.e., permit the [s]tudents to continue attending school—until after the presentment of further evidence on the merits of the [s]tudents' claims." *Id.* at 107.

Thus, we hold here that while the TRO caused the Prendergast's coverage to be reinstated shortly after it had been terminated, the effect was simply a return to the status quo—the last peaceable status prior to the controversy over Plaintiff's coverage. The issuance of the TRO in this case, therefore, is an insufficient basis on which to find that Plaintiff was a prevailing party entitled to an award of fees and costs under the EAJA.

Apart from preserving the status quo, the district court's TRO involved no determination on the merits of Prendergast's claims. In granting the TRO, the district court explicitly stated only that Plaintiff raised "sufficiently serious questions going to the merits to

---

[3] Even though the district court was "unclear [as to] whether [it] intended to grant [a] *temporary restraining order*" or a preliminary injunction, this Court determined that the record did not support the conclusion that the district court granted a preliminary injunction. *See Garcia*, 561 F.3d at 103, 106-07.

make them a fair ground for litigation" and that "plaintiff has demonstrated that she will suffer irreparable harm." At the hearing, the district court specifically avoided deciding whether Prendergast had shown that she had a likelihood of success on the merits because the government had not had a chance to review the filings or prepare its opposition. In sum, the court "did not determine that plaintiff[ ] had a legal right or entitlement to the relief granted, only that [she] would suffer irreparable injury in the absence of relief. Therefore, an award of fees . . . [is] not justified."[4] *LaRouche* 20 F.3d at 75.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the order and judgment of the district court awarding attorneys' fees and costs in favor of Plaintiff-Appellee.

---

[4] It is worth noting that most TROs are designed to preserve the status quo and do not properly address the merits. A TRO is typically issued on the strength of the plaintiff-movant's papers with little or no notice to the non-movant. Due process is sacrificed to the exigencies of the emergency prompting this very preliminary relief. It is not at all surprising, therefore, that courts generally do not view one who obtains a TRO as a "prevailing party."