*Williamson v. Maciol*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of January, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> AMALYA L. KEARSE,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

───────────────────────────────

NICOLE WILLIAMSON, SARAH BARRETT, SHANNON TERRELL, on behalf of themselves and all others similarly situated,

> *Plaintiffs-Appellants*,

v.                                                      20-2779

ROBERT MACIOL, LISA ZUREK, Chief Deputy Oneida County Jail,

> *Defendants-Appellees*.

───────────────────────────────

| | |
|---|---|
| For Plaintiffs-Appellants: | JOSHUA COTTER, Legal Services of Central New York, Syracuse, NY. |
| For Defendants-Appellees: | DANIEL K. CARTWRIGHT (David H. Walsh, IV, *on the brief*), Kenney Shelton Liptak Nowak LLP, Jamesville, NY. |

Appeal from an order of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's order is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiffs Nicole Williamson, Sarah Barrett, and Shannon Terrell (together, "Plaintiffs") appeal from an August 3, 2020 order of the district court granting their request for class certification but denying their request for a preliminary injunction. Inmates in the Oneida County Jail are classified as either "general custody" or "closed custody" based on a variety of factors, with the latter category typically subject to greater restrictions on their liberties. Plaintiffs brought this action against Robert Maciol, the Oneida County Sheriff, and Lisa Zurek, Chief Deputy at the Oneida County Jail (together, "Defendants") on behalf of themselves and all general custody female inmates. Prior to January 2020, general custody female inmates were held in what are known as "podular units" ("pods") within the jail along with the closed custody female inmates. General custody male inmates are similarly held in such units. In January, however, all female inmates were moved to what are known as "linear" units to separate the general custody inmates from the closed custody inmates. The linear units, however, are indisputably smaller than the pods, and Plaintiffs allege that this arrangement affords them unequal access to programming, privileges, and benefits, as compared to male inmates. As a result, Plaintiffs argue their treatment violates the Equal Protection Clause of the Fourteenth Amendment as well as the corresponding provision in the New York State Constitution, and that the district court erred in denying them preliminary relief. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

\*   \*   \*

We review a district court's denial of a preliminary injunction for abuse of discretion. *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 99 (2d Cir. 2009)). To be sure, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). But where the record as to whether a preliminary injunction properly issued is insufficient for meaningful appellate review, the appropriate course is to vacate and remand for further findings. *Knox v. Salinas*, 193 F.3d 123, 129–30 (2d Cir. 1999).

At the start, our precedents draw a distinction between mandatory injunctions, which alter the status quo, and prohibitory injunctions, which maintain it. *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). Here, the district court concluded that a preliminary injunction would alter the status quo, so that the mandatory standard, requiring a plaintiff more clearly to demonstrate a likelihood of relief, was applicable. Plaintiffs challenge this determination. For the following reasons, we conclude that on the present record, we are unable adequately to review the question.

We have held that the status quo for the purpose of determining whether an injunction is mandatory or prohibitory is "the last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2018) (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014)); *see also* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948 (3d ed. 2013) (noting that courts have "defin[ed] the status quo as 'the last peaceable uncontested status' existing

3

between the parties before the dispute developed" when considering awarding preliminary relief). Where a defendant has altered the status quo, exposing a plaintiff to irreparable harm, the prohibitory standard properly applies, and may require that the defendant take action to restore the status quo pending a decision on the merits. *See Mastrio*, 768 F.3d at 120–21 (noting that for both preliminary injunctions and TROs "[p]reserving the status quo is not confined to ordering the parties to do nothing: it may require parties to take action"); *see also Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 89–90 (2d Cir. 1983) (characterizing plaintiff's request for reinstatement of her employment as "a restoration of the *status quo ante*"). But "[i]t often is difficult to determine what date is appropriate for fixing the status quo." 11A WRIGHT & MILLER, *supra*, § 2948. Among other things, if a plaintiff waits to contest a change in circumstance, the relevant status quo may also change. *See Jolly v. Coughlin*, 76 F.3d 468, 474 (2d Cir. 1996) (holding that where a prisoner had waited over three-and-a-half years to challenge the conditions of his confinement a request to alter those conditions was mandatory rather than prohibitory).

Here, Plaintiffs contend that Defendants altered the status quo, subjecting them to irreparable harm, when Defendants moved general custody female inmates from the pod units to the linear units in January. But the record is unclear as to the number of current class members who were inmates at the facility in January, when this move occurred.[1] The district court, moreover, determined that questions of fact persist as to whether Plaintiffs promptly pursued administrative remedies. But the district court did not resolve these factual questions or assess the likelihood that Plaintiffs will be able to show that they have exhausted available remedies. Plaintiffs may be correct that the prohibitory standard applies to their claims, assuming, among

---

[1] We note, for example, that only two of the three named plaintiffs were inmates when the move occurred.

other things, that they promptly pursued their remedies. *Cf. League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (holding that a suit filed on the same day the challenged bill was signed into law was a request for prohibitory relief even though an injunction would require the state to continue offering certain services). Our own review of the record, however, leaves us unable properly to review the district court's determination as to the applicable standard.

But we need not resolve the question because we would vacate and remand under either standard, based on missteps in the district court's analysis of Plaintiffs' likelihood of success on the merits. The district court's order discusses three grounds that could each be dispositive of whether Plaintiffs are likely to succeed on the merits of their claim: (1) whether Plaintiffs have exhausted their remedies; (2) whether Plaintiffs receive substantially equivalent treatment to comparable men; and (3) whether any disparities satisfy intermediate scrutiny.[2]

With respect to the first of these potential rationales, if the district court were to conclude that Plaintiffs did not exhaust their remedies as the Prison Litigation Reform Act ("PLRA") requires, they would surely not be entitled to an injunction since their entire case would have to be

---

[2] With respect to this last point, we observe that the parties have accepted that intermediate scrutiny applies to gender discrimination in prisons. We further observe that our sister circuits have held that intermediate scrutiny is appropriate. *See, e.g.*, *Harrison v. Kernan*, 971 F.3d 1069, 1076–80 (9th Cir. 2020); *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 974 (8th Cir. 2009); *Pitts v. Thornburgh*, 866 F.2d 1450, 1453–55 (D.C. Cir. 1989). But the "Supreme Court has created a lower level of scrutiny in determining the constitutionality of prison rules," generally requiring only that prison action "be reasonably related to a legitimate penological interest." *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996) (citing *Turner v. Safley*, 482 U.S. 78, 81 (1987)); *see also Washington v. Harper*, 494 U.S. 210, 224 (1990) ("We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights."). *But see Johnson v. California*, 543 U.S. 499, 509 (2005) (holding that "express racial classifications" remain subject to strict scrutiny even in the prison context). Accordingly, our cases apply this *Turner* standard "to the assessment of equal protection claims in the prison setting." *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990); *see also Allen*, 100 F.3d at 261. In light of the absence of briefing on this issue, we nevertheless assume for purposes of this appeal that intermediate scrutiny applies.

dismissed. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The district court, however, clearly disclaimed reliance on exhaustion as a basis for its denial of preliminary relief, noting that failure to exhaust is an affirmative defense and that "questions of fact exist as to whether administrative remedies were available to Plaintiffs." J. App'x 180.[3] So long as these open factual questions remain unanswered, we cannot say that the district court erred in assuming "that Plaintiffs did exhaust their administrative remedies at this phase" of the proceedings.

With respect to the second ground listed above (whether Plaintiffs' treatment is substantially equal to that of comparable men), the district court concluded that Plaintiffs failed to demonstrate that general custody women do not receive substantially equivalent treatment to similarly situated men. But, at least as the record stands now, we are not persuaded.

The Supreme Court has explained that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Because Defendants do not contest that the female general custody inmates are similarly situated to their male counterparts, the next step in the inquiry is to determine whether they are treated alike. When addressing this question, our sister circuits have noted that the Equal Protection Clause does not require perfect identity between the programs available to women and men in prisons. *See, e.g.*, *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 926–27 (D.C. Cir. 1996) (rejecting "the program-by-program method of comparison embraced by the dissent, [in which] any divergence from an identity of programs gives rise to equal protection liability"); *Klinger v. Dep't of Corr.*, 31 F.3d 727, 732 (8th

---

[3] We also note that our understanding from oral argument is that the factual record on this question has been further developed since the district court's order in a way that may alter the results of this analysis.

6

Cir. 1994) (same).[4] But even applying this flexible analysis, we are not convinced on the present record that the Plaintiffs' treatment is sufficiently similar to comparable male inmates as to render Plaintiffs unlikely to succeed on the merits.

Although the district court considered the benefits and privileges of the male and female inmates and concluded that they are substantially equivalent, lost in the district court's assessment is an evaluation of the housing itself. The record is clear that a cell in the linear housing units is half the size of a cell in the pods, lacks a window to the outdoors, and has bars, rather than a door with a small window, at the front of the cell, which arguably diminishes privacy. Moreover, the roomy common areas available in pods likewise contrast sharply with the six-foot-wide corridor where inmates can gather in linear housing units. Making matters worse, female inmates are provided with only two hours of outside recreation while comparable male inmates receive up to six, depending on the number of men who wish to avail themselves of the outdoor space. Further development of the record may demonstrate that Plaintiffs are indeed treated equally based on a full assessment of the benefits and drawbacks of the different housing units. Absent more, however, the present record does not support a denial of relief on the ground that Plaintiffs failed to show the required difference in treatment.

Nor does the current record support a finding that the disparate treatment satisfies intermediate scrutiny. As their only rationale for the new housing arrangements, Defendants cite the declaration of Chief Deputy Zurek, who claims that when a podular facility is less than one fourth occupied "it becomes increasingly difficult to properly police fewer inmates" because the

---

[4] We note that these statements in both *Women Prisoners* and *Klinger* were not core to the holding of either case, as both courts concluded that the women and men were not similarly situated. *Women Prisoners*, 93 F.3d at 913, 923–26; *Klinger*, 31 F.3d at 731. Nevertheless, the required segregation of inmates by gender and the deference owed to prison administrators leads us to find these statements persuasive.

7

resulting environment is one "where inmates are able to evade effective observation by the corrections staff." J. App'x 79. The district court relied on this affirmation without further comment in concluding that preliminary relief should not be afforded. But this counterintuitive assertion – that fewer inmates are more difficult to monitor than many – cannot pass scrutiny without further elaboration that is wholly missing from Zurek's affirmation.

To survive intermediate scrutiny, a challenged classification and corresponding disparate treatment must be substantially related to an important government interest. *United States v. Virginia*, 518 U.S. 515, 533 (1996). The justification offered in support of a challenged policy must be exceedingly persuasive and must additionally be "genuine, not hypothesized or invented *post hoc* in response to litigation." *Id.* To be sure, in the sensitive area of prison administration, our sister circuits have stated that substantial deference must be accorded to the judgment of prison administrators when applying this heightened or intermediate scrutiny. *See Harrison v. Kernan*, 971 F.3d 1069, 1076 (9th Cir 2020) ("The deference owed to judgments made by prison officials must always be factored carefully into the analysis of inmates' constitutional challenges to prison regulations, and our decision today should not be taken to hold otherwise."); *Pitts v. Thornburgh*, 866 F.2d 1450, 1455 (D.C. Cir. 1989) ("Heightened scrutiny does not eliminate appreciation of both the difficulties confronting prison administrators and the considerable limits of judicial competency, informed by basic principles of separation of powers."). Moreover, Congress has specifically instructed federal courts to be highly conscious of the unique security needs of prisons and, accordingly, to be deferential to the judgment of administrators who have unique expertise. *See* 18 U.S.C. § 3626(a)(2) (instructing courts to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief"); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to

8

the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

To be clear, preliminary relief may well be inappropriate here based on a further assessment of whether the disparate treatment satisfies intermediate scrutiny. Without such further elaboration from Defendants, however, we do not see how Chief Deputy Zurek's affirmation provides sufficient justification for the challenged policy to meet the bar for persuasiveness that intermediate scrutiny requires. We offer no judgment on any further elaboration Defendants may provide, nor would it be appropriate or prudent to substitute our judgment about prison security for the expert judgment of prison administrators about matters of jail security. *See Pitts*, 866 F.2d at 1455 ("[T]he scrutiny to find a direct and substantial relation between the government's means and ends must not substitute the court's presumed expertise for that of prison administrators as the court evaluates administrators' choices of one course over others."). But deferential review of justifications offered by prison administrators is not rational basis review. *Id.* ("Th[e] acknowledgement of the difficulties inherent in the prison context does not reduce or eviscerate heightened scrutiny, but it does recognize that those difficulties do not disappear once a party raises a discrimination claim."). Defendants must explain to the reviewing court *why* it would be more difficult to provide Plaintiffs with equal treatment and must assure the district court that these are not *post hoc* rationalizations. On this record, we are unable to discern whether the difficulty identified is a function of the administrative inconvenience of housing a small number of inmates in a pod, the pecuniary cost of needing to hire more staff, or the unique features of prison management. We therefore believe remand is warranted here for further development of the record.

9

In sum, our uncertainties about the record and the basis for the district court's decision lead us to conclude that remand is appropriate. Accordingly, we **VACATE** the district court's order and **REMAND** the case to the district court for clarification of its decision and additional findings of fact or conclusions of law as necessary. In the event of another appeal, either party may restore our jurisdiction pursuant to the procedure outlined in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), so that the appeal will be referred to this panel.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk